PHILIP P. RESTIVO v. PUBLIC SERVICE COMMISSION ET AL.

*Motor Vehicle Law—Requirement of Permit—Validity— Transportation For Hire—Injunction*

Code, art. 56, sections 251-257, requiring the owner of a motor vehicle to be used in the public transportation of passengers for hire to secure a permit from the Public Service Commission and to apply for registration with the motor vehicle commissioner, is not unconstitutional as involving a taking of property without due process of law.                    pp. 37, 38

The operation of motor vehicles by their owner for the carriage of passengers for money on each Sunday, always to the

same destination and usually over the same route, *held* to be within the provisions of the motor vehicle law applicable to vehicles used in the public transportation of passengers for hire, although the passengers went through the form of chartering the vehicle used.                                    pp. 35-37

A court of equity will not, by the use of the extraordinary remedy of injunction, aid in an obvious effort to circumvent the provisions of a law, such as the public passenger motor vehicle law, designed to promote and protect the public interest.
                                                      p. 37

Statutes requiring the payment of license fees varying in amount with the kind, character, and use of the vehicle, the registration of drivers and the determination of their competency, the designation of routes and establishment of schedules for those undertaking to haul the public, the control of those engaged in public transportation and the requirement that they secure a permit before beginning operations, involve reasonable regulations of motor vehicle traffic and are a proper exercise of the police power.                              p. 37

In a suit by the owner of motor vehicles to enjoin the Public Service Commission from preventing their operation for the carriage of passengers for hire until the procurement by him of a permit, as required by the motor vehicle law, the fact of his conviction of the violation of that law by the same course of operation was admissible.                          p. 38

The fact that such owner had previously conducted a similar business over the same route, for which he held a proper permit, and that he had sold this business, was admissible as reflecting on his knowledge of the situation, and his motive in arranging the operations as he did.                      p. 38

*Decided June 30th, 1925.*

Appeal from the Circuit Court of Baltimore City (SOL-TER, J.).

Bill by Philip P. Restivo, trading as Restivo Brothers, against Harold E. West and others, constituting the Public Service Commission of Maryland, and E. Austin Baugh-

man, Commissioner of Motor Vehicles of Maryland. From
a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS,.
OFFUTT, PARKE, and WALSH, JJ.

*Leon H. A. Pierson* and *Richard E. Preece,* with whom.
was *Lindsay C. Spencer* on the brief, for the appellant.

*Herbert Levy* and *John Hubner Rice, Assistant Attorney
Generals,* with whom was *Thomas H. Robinson, Attorney
General,* on the brief, for the appellees.

WALSH, J., delivered the opinion of the Court.

Some time prior to March 12th, 1925, the appellant was
engaged in operating certain automobile busses between
Gwynn Oak Junction and the Sykesville Sanatorium, and
had a permit from the Public Service Commission of Mary-
land authorizing him to so operate them. Shortly before
the date above mentioned he sold the good will of his busi-
ness over this route to the Blue Ridge Transportation Com-
pany for $6,000. and thereafter his permits to use this.
route were transferred to that company. The appellant
owned a garage located at Gwynn Oak Junction, in which
garage he kept his busses and cars and, shortly after the
sale of the good will, he began to run his busses and cars
to the sanatorium on Sundays over the same route, the plan
being to sell tickets to persons who came to the junction
on those days for the purpose of visiting the sanatorium,.
which tickets entitled the parties holding them to ride on
the busses and cars of the appellant. He was indicted for
this method of operation because he did not have any per-
mit from the Public Service Commission, as required by the
"Public Passenger Motor Vehicle Law" (sections 251 to
257 of article 56 of the Code), and, on March 12th, 1925,
he was convicted. On Sunday, March 15th, 1925, he again
ran one of his busses carrying nineteen persons from the
junction to the sanatorium, and also ran a touring car with

two passengers.  On the following Sunday two touring cars
carrying a total of ten persons were used, and on the last
Sunday in March one bus, carrying seventeen passengers,
and a touring car, carrying three passengers, were used.  On
all of these occasions the passengers signed a paper stating
that they were "chartering" the vehicle used, a charge of
thirty dollars was made for each bus, and varying charges
were made for the cars.  All of the vehicles left between
noon and 1:30 P. M., all of them were driven by employees
of the appellant, and all of them, save one of the touring
cars used on March 22nd, went from the junction to the
sanatorium over the route sold by the appellant to the Blue
Ridge Transportation Company.

While this operation was being carried on, the appellant
was notified by officials of the Public Service Commission
that he was violating the "Public Passenger Motor Vehicle
Law," and that if he did not cease his operations he would
be arrested by the State police for such violation.  The appel-
lant thereupon filed a bill in the Circuit Court of Baltimore
City, alleging that his operations did not constitute a viola-
tion of the law above mentioned, and asking that the Public
Service Commission and the commissioner of motor vehicles
he restrained from preventing the. appellant "from operat-
ing said busses and said touring cars in the manner afore-
said or from interfering in any way with the said plaintiff
or with the said busses and touring cars or with the agents
and servants of the plaintiff in operating said busses and
touring cars."  An answer to this bill was filed by the Public
Service Commission and the commissioner of motor vehicles,
testimony showing substantially the facts above set forth
was taken, and after hearing and argument the learned court
below dismissed the bill of complaint, and the plaintiff ap-
pealed.

The law of Maryland divides passenger motor vehicles
operated for gain into two classes.  One of these is governed
by Class F of section 182 of article 56 of the Code (section

182 being originally chapter 687 of the Acts of 1916), which provides for the payment of a license fee of one dollar and twenty cents per horsepower or fraction thereof in the case of all motor vehicles operating for the purpose of transporting persons for hire upon any of the public highways of this State other than motor vehicles operating on fixed schedules, the registration fees of which are fixed by other specific provisions of law, and the other is governed by the "Public Passenger Motor Vehicle Law" (sections 251 to 257 of article 56 of the Code, originally chapter 610 of the Acts of 1916), the first section of which provides that: "It shall be the duty of each owner of a motor vehicle to be used in the public transportation of passengers for hire operating over State, State aid, improved county roads and streets and roads of incorporated towns and cities in the State of Maryland to secure a permit from the Public Service Commission of Maryland to operate over said roads and streets, and present same to the motor vehicle commissioner annually at the time and according to the method and provisions prescribed by law for owners of all other motor vehicles, to make an application in writing for registration with the commissioner of motor vehicles, and to state in said application besides the other matters by law provided, the seating capacity for passengers of said motor vehicle, the route in which said motor vehicle is to be used," etc.

These two statutes were first considered by this Court in the case of *Smith v. State,* 130 Md. 482, and, in delivering the opinion of the Court, Judge Stockbridge said: "The intent of the legislative enactment is perfectly clear. What that body was attempting to do, was to distinguish as between motor vehicles operated as common carriers, and those not regularly so operated; the former would be subject to the provisions of chapter 610; the latter governed by the provisions of chapter 687." And in the later case of *Towers et al. v. Wildason,* 135 Md. 677, 682, this construction of the two acts was approved.

It is difficult to determine with exactness just when the

owner of a motor vehicle is operating as a common carrier, as that term is ordinarily understood in the law, but the courts have not been inclined to excuse the increasing number of those who earn their livelihood by transporting persons or goods for hire in motor vehicles, from the responsibilities of common carriers simply on technical grounds, and they have been particularly slow to excuse them when their plan of operation bore evidence of being a studied attempt to reap the rewards of common carriers without incurring the corresponding liabilities.

In the case of *Smith v. State, supra,* this Court, in holding the operator of a "jitney bus" amenable to the statute under consideration, said: "That the owner of a motor vehicle who regularly transports passengers for hire between given termini for a fixed compensation may, by varying his route from time to time between such termini, change his classification, amounts to a scheme to evade the provisions of law and can not find countenance at the hands of the courts."

And in the case of *Goldsworthy v. Pub. Serv. Commn.,* 141 Md. 674, 683, a plan whereby the owner of a motor vehicle entered into a written agreement with another person, under the terms of which the owner was to transport, for a varying consideration, such passengers as the other person designated, was held to be an evasion of the statute, and Chief Judge Boyd in the course of the opinion said: "The use of motor vehicles in carrying passengers and property has become very general in this state, as well as elsewhere, and while such business should not be unnecessarily interfered with, the protection of the public demands careful supervision and proper control over them, in so far as they are brought within the statutes. The owners certainly should not too readily be permitted to enter into contracts, or adopt measures, which will enable them to readily evade the letter or the spirit of the statutes intended to govern them."

In the present case the testimony shows that the appellant formerly operated over the route in question under permits

duly issued by the Public Service Commission. Later on he
sold his rights to this route and his permits were given to
the purchaser. The appellant's garage happened to be located
at the initial terminal of the route, and after selling out his
franchise he continued to operate his busses and cars over
the same route, adopting the expedient of selling tickets to
his former customers. For this he was indicted and convicted
for operating without a permit in violation of the Public
Passenger Motor Vehicle Law. He thereupon devised the
plan of having his passengers sign a chartering agreement,
and in pursuance of this plan he hauled twenty-one passengers
on March 15th, 1925, ten passengers on March 22nd, 1925,
and twenty passengers on March 29th, 1925, for an alleged
total consideration of ninety-one dollars. With the excep-
tion of one touring car, which carried four passengers to the
sanatorium from a point other than the junction, all of these
vehicles operated over the same route, they were all driven
by employees of the appellant, they all left between the hours
of noon and 1:30 P. M., and they all returned about the
same time. The people who used these vehicles varied in
many instances from Sunday to Sunday, the alleged price
received for the two busses was the same, $30, but the
prices charged for the touring cars were $5, $6 and $10.
The appellant only operated on Sunday; but it is clear from
the evidence that it was chiefly on Sunday that people vis-
ited the sanatorium, and by only running his vehicles on
that day of the week the appellant was securing the remun-
eration derived from transporting the peak loads, without
having the expense of maintaining any regular service for
the benefit of the public. The appellant stated that he did
not solicit passengers, and alleged that they came to his
garage for the busses and cars, but only once was any effort
made to engage a car ahead of time. Whoever happened
to be at the junction made up the charter party, and the
first members of the party apparently waited until a suffi-
cient number had been obtained to fill the bus or other
vehicle.

There are, it is true, some features in this case which differentiate it from the cases heretofore decided by this Court, but we think all of these different features are simply part and parcel of a flagrant scheme to evade the provisions of the law, and as such they are entitled to no consideration in a court of equity. We are not required in this case to say to what extent the owner of a motor vehicle having a hiring license can be prohibited from hauling passengers for hire over any route in Maryland, but where, as in this case, the cry of "property rights" is used to cloak an obvious effort to circumvent the provisions of a law designed to promote and protect the public interest, a court of equity will not aid the attempt by the use of the extraordinary remedy of injunction.

Nor do we find any merit in the appellant's contention that the regulations imposed by the Public Passenger Motor Vehicle Law are unconstitutional, or that the refusal to grant an injunction in this case will permit a taking of the appellant's property without due process of law within the meaning of the Fourteenth Amendment of the Constitution of the United States.

The growth of automobile traffic in this country during recent years has been enormous, and no doubt can be entertained that the State, in the exercise of its police power, has the right to impose reasonable regulations upon the conduct of this traffic. The payment of license fees varying in amount with the kind and character of the motor vehicle and the use to which it is to be put, the registration of drivers and the determination of their competency, the designation of routes and establishment of schedules for those undertaking to haul the public, the control of those engaged in public transportation, and the requirement that they secure a permit before beginning operations, have uniformly been held "reasonable regulations" by the courts, on the ground that their enforcement promotes the public safety and welfare. See *Ruggles v. State,* 120 Md. 553; *Hendrick v. Maryland,* 235 U. S. 610; *Kane v. New Jersey,* 242 U. S.

150; *Nolen v. Riechman,* 225 Fed. 812; *Hadfield v. Lundin,* 98 Wash. 657; *West v. Asbury Park,* 89 N. J. Law, 402; *Jitney Bus Assoc. v. Wilkes-Barre,* 256 Pa. 642; *Houston v. Des Moines,* 176 Iowa, 455; *Memphis v. Tennessee,* 133 Tenn. 83; *Motor Transit Co. v. Railroad Commission,* 189 Cal. 573; *Gizzarelhi v. Presbery,* 44 R. I. 333.

And in our opinion the provisions of the Maryland Public Passenger Motor Vehicle Law come well within the rules regarding "reasonableness" established by the foregoing authorities.

The argument that the refusal to grant the relief asked in this case will result in a taking of the appellant's property without due process of law is equally untenable. We are not deciding that the appellant cannot make a *bona fide* agreement for the use of his motor vehicles; we simply decide that his present method of operating, looked at as a whole, is not *bona fide,* but constitutes a studied and fraudulent effort to evade the statute, and. for this reason a court of equity will not aid him in carrying out his plan. This refusal of the court obviously does not in itself subject the appellant to any "taking of property without due process of law."

At the trial below, the appellant objected to all the testimony regarding his sale of the sanatorium route to the Blue Ridge Transportation Company, and also to the testimony regarding his conviction in the Criminal Court of Baltimore City. We think the testimony on both these points was admissible. The appellant was asking a court of equity to enjoin certain public officials from causing his arrest for acts which, the officials alleged, constituted a violation of the law, and it would seem to be obvious that under these circumstances the court was entitled to know all the facts surrounding the appellant's conduct, so that it could intelligently determine whether or not the appellant's operation did constitute a violation or evasion of the law. His conviction by a court of competent jurisdiction for a very similar operation just a few weeks before the filing of the bill was certainly admissible, and in our opinion the sale to the

company reflected very materially on the appellant's knowledge of the situation regarding the route he was using, and his motive in arranging his operation as he did.

Finding no error in the action of the lower court, the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellees.*