## BARBOUR et al. v. WALKER et al.

No. 17218. Opinion Filed Sept. 13, 1927.

(Syllabus.)

1. **Carriers—Constitutionality of Statute Regulating Use of Highways by Motor Carriers for Hire.**

Chapter 113. S. L. 1923, providing for the regulation of the use of the public highways

of the state by motor carriers for hire through the limitation of that use by the rule of public convenience and necessity, is a valid and constitutional exercise of the police power of the state to promote the public good, to preserve the public peace, and to protect the public welfare, and said act is not in contravention of any rights of the citizen guaranteed to him by the 14th Amendment to the Constitution of the United States, nor by section 7 of article 2 of the Constitution of Oklahoma.

**2. Same—Private Motor Carrier for Hire Subject to Regulatory Statute.**

A private motor carrier operating over the public highways of the state, though without regular or fixed time schedules, between fixed points in the transportation of commodities for hire under separate contracts with several principal business concerns located and doing business in one of such points, is a motor carrier within the meaning of chapter 113, S. L. 1923, and is subject to control and regulation, by the provisions of law therein provided.

Commissioners' Opinion, Division No. 1.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by Ben Barbour and W. R. Riggs, against A. T. Walker and O. E. Offil. From an order granting a temporary injunction, defendants appeal. Affirmed.

John E. Luttrell, for plaintiffs in error.

F. H. Reily, for defendants in error.

TEEHEE, C. On February 3, 1926, plaintiffs secured a temporary injunction against the defendants upon a petition wherein plaintiffs in substance alleged that they were motor carriers for hire engaged in transporting commodities between the cities of Oklahoma City and Shawnee over State Highway No. 3, for which purpose they had secured a proper certificate of public convenience and necessity from the State Corporation Commission, and had paid the proper license fee, and had otherwise complied with the provisions of chapter 113, S. L. 1923, regulating the use of motor carriers for hire upon the highways of the state; that defendants were likewise operating motor carriers between said points and over the same route without having secured from the State Corporation Commission a certificate of public convenience and necessity, and were otherwise operating without compliance with the provisions of said chapter 113, and that thus they were operating in competition with plaintiffs and depriving them of revenue to which they were justly entitled by virtue of their compliance with said chapter 113; that defendants' operations of their motor car-

riers constituted a public nuisance, and a menace to the common users of said highway, and an imposition on the just and lawful rights of plaintiffs, by reason whereof plaintiffs' business suffered irreparable damage and injury, for the redress of which, by reason of defendants' insolvency, plaintiffs were without an adequate remedy at law. Wherefore they prayed a permanent injunction against said defendants.

Defendants by answer admitted the allegations of plaintiffs' petition, but denied infraction of the law as alleged. They further answered that they were associated in the transportation of freight and merchandise between the points mentioned under separate contracts with five individuals and firms in Oklahoma City, that they did not hold themselves out to the public as common carriers, nor did they intend to solicit other business from other persons; that such freight and merchandise was transported to the city of Shawnee for their employers, either for storage in storage plants furnished by said defendants for redelivery when sold, or originally to purchasers of said commodities doing business in the city of Shawnee, and that they were so operating without any regular or fixed time schedules; that being operators as private carriers they were not subject to the provisions of said chapter 113. Wherefore they prayed denial of plaintiffs' petition. Upon demurrer that part of their answer relating to storage of commodities was stricken.

Upon hearing, both parties introduced evidence in substantiation of their respective pleas. It further developed that the concerns with which the defendants held contracts were of the principal business houses engaged in their respective line of commodities in Oklahoma City.

The court found the issues for the plaintiffs and adjudged that they were entitled to a temporary injunction pending the further order of the court, to which judgment defendants excepted, and upon superseding said judgment brought the cause here for review.

In the trial of the case plaintiffs contended that as holders of certificates of public convenience and necessity they were entitled to injunctive relief; that chapter 113 was broad enough to, and did include, all persons operating motor trucks for hire in the manner alleged, whether such persons were engaged as common carriers or as private carriers. Defendants contended that the act does not regulate private carriers not engaged as common carriers. The judgment of the court in granting the temporary

injunction was in effect a determination that defendants were in fact motor carriers within the meaning of chapter 113, and were thus subject to control and regulation thereby.

In this court defendants, for reversal of the judgment, contend, first, that they are private carriers, and that as such they are not within the purview of chapter 113, S. L. 1923; and second, that if said chapter 113 is operative as to them, the said act is unconstitutional and void as in violation of their rights under the 14th Amendment to the Constitution of the United States, and under section 7 of article 2 of the state Constitution.

We will consider these contentions together, as they may be properly resolved into the one general proposition, namely, that defendants have the right as private motor carriers to the use of the public highways of the state for private enterprise and profit without let, hindrance, or interference from the public authorities of the state.

The constitutionality of chapter 113 has heretofore received consideration by this court in the case of Ex parte Tindall, 102 Okla. 192, 229 Pac. 125. The law was there challenged on the identical grounds here relied on. Upon a thorough analysis of the act, which need not here be reiterated, its validity was sustained.

In addition to what was there said as to the purpose and necessity of the law, we may here well observe that, prior to the advent of automotive power, regulation of the use of the public highways was not essentially required, as no phase of the public welfare was either inconvenienced or exposed to danger as now, though they were used for both common travel and private gain, particularly between points where there were no railroad facilities. Construction and maintenance of the highways then were left to county and township organizations with the financial means therefor raised largely, if not altogether, by local taxation. Public use thereof was not as marked then as now, for the traveling public found it convenient to pass to their destination by means of travel by rail rather than by the horse power vehicle. With the advent of the automobile our mode of travel was transformed in less than a decade. This transformation required a change in our system of highway construction from that of the ordinary improvised dirt roads to that of highly improved and hard surfaced roads. This accelerated the establishment of our State Highway Department whereunder we are now expending millions of dollars annually to meet the require-

ments of the traveling public. Speed laws were found to be necessary to maintain order and to minimize danger in the use of the highways. In addition to the primary purposes, that of accommodation of the traveling public in the common acceptation of the term, utilization of our highways, constructed and maintained at large public expense, by transportation thereover of both passengers and property for private gain developed even between points where railroad facilities were available, and on that scale where regulation of the use of our highways for private enterprise became a necessary function of government, for if not so regulated appropriation thereof for private purposes would eventually place the public in the position of furnishing the highways for private enterprise rather than for the public purposes for which they were established.

To obviate this condition rapidly materializing, the Legislature in its wisdom in protection of the public welfare enacted chapter 113, and other provisions of law not here necessary to notice. The law is based upon the theory that the individual citizen has no vested right to use the highways of the state for private enterprise to the detriment of the general public, and that where the individual interest conflicts with the public interest, as must be the necessary result in the use of the public highways for private purposes without regulation, the government is never impotent to protect the public welfare.

The principle applied in the regulation of the use of the highways for private enterprise rests upon public convenience and public necessity, a principle recognized and in a large degree applied by the national government in placing the control and regulation of the railroads of the country in the hands of the Interstate Commerce Commission. Title 49, Transportation, chapter 1, sec. 1, U. S. C. 1926, 44 Stat. 1649.

It was upon this theory and the application of this principle that this court in Ex parte Tindall held that the state was within the rightful exercise of its police power in the regulation of the use of the highways in sustaining the constitutionality of the law here again challenged, and denied that it in anywise was in contravention of either the 14th Amendment to the federal Constitution as in abridgment of any right or privilege of the citizen, or in deprivation of property without due process of law, or in denial to the citizen of the equal protection of the law; or of section 7, article 2 of the state

Constitution on the same subject. It was there also held that the real purpose of the act was "to regulate the use of the public highways by transportation companies" through "the regulation and control of motor vehicles operating as common carriers for hire and profit over the public highways," and that:

"The operation of motor vehicles, for the purpose of carrying passengers and freight, for hire and profit over the public highways as a transportation roadbed, is a 'public service enterprise' within the constitutional definition of such an enterprise, and as such, subject to regulation and control by the state."

In addressing itself to the administration of the law through the State Corporation Commission charged therewith, of which it was also complained was the lodgment of arbitrary power with the Commission, the court used this language:

"It would be impossible for the Commission, acting under such act, to grant a special privilege detrimental to the interests of the public, or to create a monopoly with like effect. The public has a voice in the enforcement of this act and the right to speak whenever its interests are not subserved. It has a right to say that no person or corporation shall use its public highways as a transportation line for hire; it has a right to say that any one who may be permitted to operate over such lines in such manner must have a license to do so, and has a voice as to whether its necessities and convenience require that one, two, or three shall be licensed to render the required service, or that none is required. It might be a material benefit to the public to have one transportation line over a given highway, and a substantial detriment to have more than one, hence the limit to the number is determined by the public needs. It is not that the petitioner or any other private concern has a vested right or any right to appropriate the public highways to its own free use and benefit for profit, but that the public, from the standpoint of its convenience and necessities, as well as from the standpoint of property rights in the public highways, may demand a 'public service' if it needs it, or reject it if it is not needed, and a voice as to how much of such service it needs and the conditions under which it may be rendered, and no private rights are paramount to the public good."

In Ex parte Dickey, 76 W. Va. 576 85 S. E. 781, L. R. A. '1915F, 840, we find this apt expression of the court:

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legis.ative power is that of regulation; but, as to the latter, its power is broader, the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities. 'A distinction must be made between the general use, which all of the public are permitted to make of the street for ordinary purposes, and the special and peculiar use, which is made by classes of persons in the pursuit of their occupation or business, such as hackmen, drivers of express wagons, omnibuses,' etc., Tiedeman on Municipal Corporations, sec. 229. 'The rule must be considered settled that no person can acquire the right to make a special or exceptional use of a public highway, not common to all citizens of the state, except by grant from the sovereign power.' Jersey City Gas Co. v. Dewight, 29 N. J. Eq. 242; McQuillen, Municipal Corporations, 1620."

This principle has been applied many times. Liberty Highway Co. v. Michigan Public Utilities Commission, 294 Fed. 703, and many other cases there cited, including Ex parte Dickey, supra.

In Kane v. New Jersey, 242 U. S. 160, 37 S. C. 30, 61 L. Ed. 222, we find this language:

"The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to insure safety."

While in that case neither the right of private use nor the principle of public convenience and necessity as the measure of such use was present, yet, under the reasoning of the court, there would seem to be no good ground, where private use would tend to be inimical to the public good as would be inevitable without regulation, to deny the power of the state to measure the extent of that use by the convenience of the public and the necessity for transportation facilities. In the law involved. the state in its sovereign capacity was dealing with a subject over which it appears to us, in every view of the case, it had control. In the construction and maintenance of the highways now available to the traveling pub-

llc the state has expended millions of dollars, and is still continuing to cobweb the state with hard surfaced highways for the accommodation and convenience of her citizens and all those who find it convenient to pass her way. In the enactment of this legislation no rights of any of her citizens have been contravened, for the law does not restrict the common right of the citizen to use the public highways for purposes of travel, and it does not comport with reason to say that the use of them for private gain may be exercised alike by all as it is certain that such a situation will never arise. Our view of the right of the state to enact this legislation and of the relation of the citizen thereto is best expressed by the Supreme Court of the United States in Davis v. Commonwealth of Mass., 167 U. S. 43, 17 S. C. 731, 42 L. Ed. 71, wherein was involved the right of the citizen to the undisturbed use of Boston Commons, when the court said, that:

"The Fourteenth Amendment to the Constitution of the United States does not destroy the power of the states to enact police regulations as to the subjects within their control (Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357; Railway Co. v. Beckwith, 129 U. S. 26, 29, 9 Sup. Ct. 207; Giozza v. Tiernan, 148 U. S. 657, 13 Sup. Ct. 721; Jones v. Brim, 165 U. S. 182, 17 Sup. Ct. 282), and does not have the effect of creating a particular and personal right in the citizen to use public property in defiance of the constitution and laws of the state."

We therefore regard the case of Ex parte Tindall as conclusive upon the propositions here involved, unless, as defendants contend, that by virtue of their being private motor carriers and having never held themselves out to the public as common carriers, the case of Frost v. Railroad Commission, 271 U. S. 583, 46 Sup. Ct. 605, 70 L. Ed. 1101, is controlling. That case involved the constitutionality of the law of the state of California, similar in many of its provisions to chapter 113. The state case is reported in 197 Cal. 230, 240 Pac. 26.

Briefly, the facts in that case were that Frost and Frost Trucking Company had a single contract to transport citrus commodities for the Redland Orange Growers' Association from Redlands to Los Angeles. The Railroad Commission of California, corresponding generally in duties to that of our State Corporation Commission, was charged as here with the administration of the law there involved. Complaint was made before it that the transporting company was operating without a certificate of public convenience and necessity, whereupon it was cited to show cause why an order should not be issued requiring it to desist in its operations in violation of law. The law classified motor carriers as common carriers, subject to regulation as such. The company contended, as here, that it was engaged in a private enterprise, and was without the purview of the statute, and that if it was held to be within the provisions of the law, then the law, as to it, was invalid as in contravention of the 14th Amendment to the federal Constitution and like provisions of the state Constitution. Upon hearing, the commission denied these contentions and rendered judgment accordingly.

The company appealed to the state Supreme Court, and there renewed its contentions. The state court sustained the Commission and declared the act to be constitutional. The company, by appropriate proceeding, brought the case to the Supreme Court of the United States for review.

In the state court it was the theory that the law was not in fact a regulation of the use of the highways, but a regulation of the business of transportation companies, it being said that the,

"Auto Stage and Truck Transportation Act regulating transportation companies, including private carriers, is not in fact a regulation of the use of the highways, nor does it take private property for public use without compensation in violation of Const. Cal. art. 1, paragraph 13, and Const. U. S. Amend. 14, nor does it violate the due process clause; but what the act does, in effect, is to make a conditional offer of a special privilege."

The national court, in passing upon the validity of the law, held that this view and construction of the act by the state court was binding upon it, and thus the question of the regulation of the use of public highways for private gain was not squarely presented to the high court.

The effect of the state's construction of the law was, that a private motor carrier operating under a single contract was converted into a common carrier by legislative fiat, and this the national court denied as being in contravention of the due process clause of the 14th Amendment. And following up the state's theory, the court further held that it was not within the power of the state to grant a privilege which required the relinquishment of a constitutional right.

Thus the distinction between the California case and Ex parte Tindall, the case here controlling, is clear, in that the California law was held to be a regulation of

the business of a private carrier, whereas the law in this state is a regulation of the use of the highways by motor carriers. Moreover, a further distinction appears between the California case and the one now in hand, as in that case the transportation company was operating as a private carrier under a single contract with a single concern, while in the case at bar the defendants were operating under five separate contracts with as many different firms dealing in different classes of commodities on a large scale.

In concluding the opinion, the national court made this observation:

"The court below seemed to think that, if the state may not subject the plaintiffs in error to the provisions of the act in respect of common carriers, it will be within the power of any carrier, by the simple device of making private contracts to an unlimited number to secure all the privileges afforded common carriers without assuming any of their duties or obligations. It is enough to say that no such case is presented here, and we are not to be understood as challenging the power of the state, or of the railroad commission under the present statute, whenever it shall appear that a carrier, posing as a private carrier, is in substance and reality a common carrier, to so declare and regulate his or its operations accordingly."

This language of the court is pertinent here, and indeed is most persuasive to support the conclusion reached by the trial court, that since the defendants were operating under five separate distinct contracts with as many principal concerns of Oklahoma City, they had in effect resolved themselves from the character and status of private motor carriers not subject to regulation, if such in fact was the case, to that of public motor carriers, and thus by their own conduct of their enterprise had completely brought themselves within the provisions of law regulating the use of the public highways for private gain.

In view of the dissimilarity of the theory of that case with the Tindall Case, and likewise in the facts with the case at bar, as above pointed out, it is our judgment that the principles laid down by the Supreme Court of the United States in Frost v. Railroad Commission are not here controlling. For these reasons, therefore, we conclude that the judgment of the district court was right, and it is accordingly affirmed.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 10 C. J. pp. 52, 53, §37   (2) 10 C. J. p. 59, §43 (Anno).