[S. F. No. 13083. In Bank.—October 22, 1929.]

ROSS FORSYTH, etc., Respondent, v. SAN JOAQUIN LIGHT AND POWER CORPORATION (a Corporation), Appellant.

Fred H. Pearson for Appellant.

Miller & Thornton for Respondent.

CURTIS, J.—On August 29, 1919, the Railroad Commission of the state of California issued and delivered to J. Scott and others, doing business under the fictitious name

of the Kings River Transportation Company, a certificate of public convenience and necessity, authorizing them to operate an automobile stage line over the public highway between the city of Fresno and Maxsons, in the county of Fresno, state of California, for the purpose of transporting thereby persons for compensation. About the time of the granting of said certificate, the defendant, the San Joaquin Light and Power Corporation, began the construction of a hydroelectric power project in Kings River canyon. The construction work upon said power plant continued to about the fourteenth day of January, 1928. In this construction work the defendant established a number of camps on and along Kings River. These camps were reached by means of the public highway from Fresno to Maxsons, a distance of approximately forty miles, and from Maxsons over private rights of way leading to defendant's various camps. These camps were situated at different distances from Maxsons, ranging from fifteen to forty miles. After the granting to the Kings River Transportation Company of the certificate of public convenience and necessity, as stated above, the defendant filed its application before the Railroad Commission for a certificate of public convenience and necessity, authorizing it to operate an automobile stage line over the public highway between the city of Fresno and said Maxsons, for the purpose of transporting thereby, for compensation, its employees and those having business with it. This application was denied by the Railroad Commission on the thirteenth day of September, 1920. Thereafter the plaintiff, Ross Forsyth, purchased from J. Scott and others said automobile stage line, and, after application in due form therefor, the Railroad Commission, on the twenty-second day of August, 1923, granted to plaintiff, doing business under the fictitious name of the Kings River Transportation Company, a certificate of public convenience and necessity authorizing him to operate said automobile stage line over the same route as that designated in the certificate to his predecessors, for the transportation of passengers, for compensation, and from the date of said order to the middle of February, 1928, plaintiff was the sole and exclusive owner of said certificate and the only person operating an automobile stage line over said route for the transportation of persons, for compensation, under authority of said Railroad Commission. Not-

withstanding the fact that it had been denied a certificate of public convenience and necessity, the defendant, on or about the twenty-seventh day of April, 1925, began to operate upon said public highway, between the city of Fresno and Maxsons, an automobile stage line, and from said last-named date up to the fifteenth day of January, 1928, continued to operate said automobile stage line over said route without any certificate, or other permission or authority so to do, from the state Railroad Commission. During said period of time defendant transported, by means of its said stage line and over the route between the city of Fresno and Maxsons, its employees, their families, and those having business with defendant. The defendant transported said persons under a separate contract, in writing, with each of said persons, whereby it collected and received the sum of $4 for transporting each of said persons from the city of Fresno to the said camps of defendant. Prior to January 20, 1926, these several contracts provided that the fare from the city of Fresno to the camps of defendant would be the sum of $4. On said last-named date, after proceedings had before the Railroad Commission, that body issued its order to said defendant to discontinue operating its said stage line between the city of Fresno and Maxsons, for compensation, unless and until defendant should receive from the Railroad Commission a certificate of public convenience and necessity, permitting such operation. No such certificate was ever issued to defendant, but, after the making of said last mentioned order, the defendant continued to operate said stage line and carried passengers thereon, but under a written contract differing somewhat from the contract formerly used by it. This latter contract provided that said passengers would be carried free of charge from the city of Fresno to Maxsons, but from Maxsons to the camps of defendant the charge or fare for each person would be the sum of $4. The defendant carried, on its said stage line, between the twenty-seventh day of April, 1925, and the twentieth day of January, 1926, 2,106 passengers, for which it received the sum of $4 for each passenger. Between the twentieth day of January, 1926, and the fifteenth day of January, 1928, when it discontinued to operate its said stage line, it carried 4,914 passengers, for which it received $4 per person. The passengers transported by defendant during the time it

operated its said stage line constituted over ninety-eight per cent of the total number of persons transported by everybody; for compensation, during said period of time. The fare which the plaintiff was authorized to charge by the Railroad Commission for transporting passengers between the city of Fresno and Maxsons was $2.50 each way. There was evidence that the plaintiff was fully equipped to transport all persons over said route who might apply for transportation during the period of time defendant operated its said stage line. The total number of passengers transported by defendant, for compensation, during the period of time aforesaid between the city of Fresno and Maxsons was 7,020. This action was instituted by the plaintiff to recover from the defendant damages alleged to have been sustained by the plaintiff by reason of the operation by defendant of its said stage line from the twenty-seventh day of April, 1925, to the fifteenth day of January, 1928, and also for exemplary damages. The action was tried by a jury and resulted in a verdict in favor of the plaintiff in the sum of $17,550 actual damages, the jury refusing to award any exemplary damages. From the judgment entered thereon the defendant has appealed.

As stated by respondent, in which statement the appellant acquiesces, "the vital question involved in this action—the one around which everything else revolves—is whether or not appellant herein, in the light of the admitted facts, was or was not a common carrier of persons, or a transportation company."

It might be well to first consider the meaning of the words "transportation company" before taking up the main question just stated. By the Auto Stage and Truck Transportation Act (Stats. 1917, p. 330, as amended in 1919 [Stats. 1919, p. 457]), "the term 'transportation company,' when used in this act, means every corporation, or person . . . owning, controlling, operating or managing any automobile, jitney bus, auto truck, stage or auto stage used in the business of transportation of persons or property, or as a common carrier, for compensation, over any public highway in this state between fixed termini, or over a regular route, and not operating exclusively within the limits of an incorporated city or town, or of a city and county."

The purpose of this act, as amended in 1919, was to make its provisions applicable to private carriers as well as common carriers (*Frost* v. *Railroad Commission*, 197 Cal. 230, 234 [240 Pac. 26]). In so far, however, as the act purported to give to the Railroad Commission the power to govern and regulate the business of private carriers or private transportation companies, the provisions thereof have, by the Supreme Court of the United States, been held to be unconstitutional and violative of the due process clause of the fourteenth amendment of the federal Constitution (*Frost* v. *Railroad Commission*, 271 U. S. 583 [47 A. L. R. 457, 70 L. Ed. 1101, 46 Sup. Ct. Rep. 605]). █ A transportation company, therefore, under the Auto Stage and Truck Transportation Act, as thus construed, must be held to be a public transportation company or a common carrier. The pivotal question, therefore, is whether the appellant, under the facts in this case, was or was not a common carrier.

█ Respondent contends that this question has been foreclosed against the appellant by the various findings and orders made by the Railroad Commission, which orders we have already referred to, and particularly the order and findings of the commission under date of January 20, 1926, in which the commission ordered the appellant to discontinue the operation of said stage line over said route for compensation. The finding upon which this order was based was as follows: "From the record herein we (the Railroad Commission) conclude and find as a fact that the operation by defendant, San Joaquin Light and Power Corporation, of an auto stage for the transportation of its employees and their families between Fresno and construction camps on Kings River, in so far as such operation is conducted over the public highways, for a fixed and definite compensation, is operation of a transportation company as such term is defined by Section 1 of Chapter 213, Statutes of 1917, and effective amendments thereto, and is being conducted by said defendant without the authority of a certificate of public convenience and necessity from this Commission as required by the provisions of the above mentioned statutory enactment." It will be observed that by this finding the commission found that the autostage line which the appellant was then operating was a transportation company as

such term was defined by the Statutes of 1917, "and the effective amendments thereto." At the date of said order, January 20, 1926, the amendment of 1919, hereinbefore referred to, was in effect. By this amendment the term, "transportation company," as we have seen, was broad enough to include private transportation companies as well as public transportation companies. The commission, therefore, made no finding that the autostage line operated by appellant was a public transportation company. It is true it made an order based upon said finding that the appellant discontinue the operation of said stage line, and respondent argues that it was absolutely necessary for the Railroad Commission to find that the appellant was a common carrier before it could make said order. We agree with respondent in this contention, but he has failed to point out, and we have been unable to find, any finding of the Railroad Commission to the effect that the appellant was a common carrier. This order may have been made under the mistaken belief that the commission had been given the power by said act to regulate private as well as public transportation companies operating upon the public highways. We are fortified in this assumption by the action of the commission in the Frost case, as construed by the United States Supreme Court (271 U. S., *supra*) at page 590 of the opinion therein, wherein said court stated, "The Commission, while agreeing that plaintiffs in error were, in fact, private carriers, held that they were subject to the provisions of the act and directed them to suspend their operations under their contract unless and until they should secure a certificate that public convenience and necessity required the resumption and continuance thereof." But as we have seen, said court held that the provisions of said act which sought to confer such power upon the commission were in violation of the federal Constitution. Under this state of facts, we think it manifest that the commission made no finding that the appellant in the operation of said stage line was operating as a common carrier. This question is not, therefore, *res judicata* as between the parties to this proceeding.

There may be some question under the recent rulings of this court (*Stratton* v. *Railroad Commission*, 186 Cal. 119 [198 Pac. 1051] ; *Motor Transit Co.* v. *Railroad Commission*, 189 Cal. 573 [209 Pac. 586] ; *McCullagh* v. *Railroad Com-*

*mission*, 190 Cal. 13 [210 Pac. 264]), just how far courts, or the commission itself, is concluded by a previous finding or order of the commission. This action, however, is not based upon any finding or order of the commission, nor was it instituted for the purpose of enforcing any order of the commission. On the other hand, it was brought to recover damages for certain acts of the appellant, some of which were alleged to have been committed long prior to the date of said finding and order of January 20, 1926. But as the commission made no finding that the appellant in the operation of said autostage line was a common carrier, the question suggested does not arise in this proceeding.

We now come to the question whether the appellant in operating said stage line for the transportation of its employees, their families and guests, for compensation was a common carrier of passengers. It was contended at one time during the trial that the appellant was transporting freight as well as passengers, but by the stipulation of the parties, the freight feature was eliminated from this controversy and the issues were narrowed to the single one of appellant's liability, if any, as a common carrier of persons.

Section 2168 of the Civil Code defines a common carrier as follows: "Every one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier, of whatever he thus offers to carry." "Private carriers are such as carry for hire and do not come within the definition of common carrier. Certain prominent characteristics mark the difference between these two classes. To impress upon one the character of common carrier it must be shown that he 'undertakes generally and for all persons indifferently to carry goods and deliver them for hire; and that his public profession of his employment be such that if he refuses, without some just ground, to carry goods for anyone, in the course of his employment and for a reasonable and customary price, he will be liable to an action.' On the other hand, private carriers are not bound to carry for any person unless they enter into a special agreement so to do." (4 Cal. Jur. 815.) This same principle is enunciated in the case of *Associated Pipe Line Co.* v. *Railroad Commission*, 176 Cal. 518 [L. R. A. 1918C, 849, 169 Pac. 62, 65]. In that case this court said, quoting in part from the case of *Munn* v. *Illinois*,

94 U. S. 113 [24 L. Ed. 77, see, also, Rose's U. S. Notes]: " 'When, therefore, one *devotes his property* to a use in which the public have an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created.' But so long as he uses his property for private use, and in the absence of devoting it to public use, the public has no interest therein which entitles it to a voice in its control."

In *Thayer* v. *California Dev. Co.,* 164 Cal. 117 [128 Pac. 21, 25], this court quotes with approval the following language from an early California case: "This public use need not be a use general or common to all the people of the state alike. It may be a use in which a small portion of the public will be directly benefited, as a street in a town, a bridge or a railroad, necessarily local in its benefits and advantages, but it must be of such a character as that the general public may, if they choose, avail themselves of it."

When measured by the definitions of a common carrier given in these authorities, the appellant appears to come far short of the characteristics required of one who exercises the privileges and is subject to the liabilities of a common carrier. The appellant in the operation of said stage line made no offer to the public to carry passengers or property. It did not, therefore, come under the definition of a common carrier contained in the section of the Civil Code above quoted and the other authorities cited. It confined its activities to carrying its own employees, their families, and those having business with it. The public was not invited nor did it have any right to the use of the facilities provided by the appellant for transporting its own employees over said route. In its application before the Railroad Commission for a certificate of public convenience and necessity it asked for no right or privilege to transport the public over said route, but confined its application for a certificate permitting it to transport its own employees and their families. It was stipulated in open court by counsel for the respondent that no one except the employees of the appellant, their families, and those having business with the company, were carried by appellant on the said stage line. This case in its essential features is much like the case of *State of Utah* v. *Nelson et al.,* 65 Utah, 457 [42 A. L. R. 849, 238 Pac.

237, 239]. Nelson was paid $20 per day by the Utah Out-Door Association to operate an automobile omnibus from Salt Lake City to the association's summer camp for the purpose of transporting persons from said city to said camp. A charge for the privileges of the camp was made, which charge included transportation to and from the camp. The association had been denied a certificate to operate the bus line by the Railroad Commission of the state of Utah and a proceeding had been instituted by the state to enjoin Nelson from operating his said bus line. The Supreme Court of the state of Utah in denying an injunction in that action, referring to the authorities cited in the opinion, said: ''They all recognize that a common or public carrier is one who, by virtue of his business or calling or holding out, undertakes for compensation to transport persons or property, or both, from one place to another for all such as may choose to employ him. Running through the cases is a recognition of the dominant element of public service, serving and carrying all persons indifferently who apply for passage or for shipment of goods or freight.. To constitute a common carrier such element is also requisite under the Utilities Act. It defines a 'common carrier' as the term is used therein, to include among others every automobile corporation engaged in the transportation of persons or property for public service over regular routes between points within the state and an automobile corporation to include every corporation or person engaged in or transacting business of transporting passengers or freight, merchandise, or other property, for compensation by means of automobile or automobile stages on public streets, roads, or highways along established routes within the state. Public service, as distinguished from mere private service, is thus a necessary factor to constitute a common carrier. Such element, in portions of the act, is not as clearly expressed as might be. Nevertheless, it necessarily is implied. It is only by the presence of such factor or element that the commission has the power or authority to regulate or control such business.''

Respondent has cited a number of authorities which he contends support his contention that the appellant in the operating of said stage line was engaged in the business of a common carrier. The principal authorities so cited by the respondent are as follows: *Barbour* v. *Walker*, 126 Okl.

227 [56 A. L. R. 1049, 259 Pac. 552, 556]; *Goldsworthy* v. *Public Service Commission,* 141 Md. 674 [119 Atl. 693, 694]; *Restivo* v. *Public Service Commission,* 149 Md. 30 [129 Atl. 884]; *Public Service Commission* v. *Western Maryland Dairy,* 150 Md. 641 [135 Atl. 136]; *Doskovitch* v. *Board of Public Utility Commrs.,* 103 N. J. L. 570 [138 Atl. 110]; *Davis* v. *People,* 79 Colo. 642 [247 Pac. 801, 802]. Practically all of these cases we think can be distinguished from the action now before us. The case of *Barbour* v. *Walker* was decided by the Supreme Court of Oklahoma after the case of *Frost* v. *Railroad Commission, supra.* That case was decided by the court expressly upon the authority of *Ex parte Tindall,* 102 Okl. 192 [229 Pac. 125], and said court differentiates said last-named case from the Frost case in the following language: ''Thus the distinction between the California (Frost) case and *Ex parte Tindall,* the case here controlling, is clear, in that the California law was held to be a regulation of a business of a private carrier, whereas the law in this state is a regulation of the use of highways by motor carriers.'' That the Supreme Court of Oklahoma correctly construed ''the California law'' (the Auto Stage and Truck Transportation Act) is evidenced by the following excerpt from the decision of the Frost case by the Supreme Court of the United States: ''It is very clear that the act (The Auto Stage and Truck Transportation Act of California), as thus applied, is in no real sense a regulation of the use of the public highways. It is a regulation of the business of those who are engaged in using them. Its primary purpose evidently is to protect the business of those who are common carriers in fact by controlling competitive conditions. Protection or conservation of the highways is not involved. This, in effect, is the view of the court below plainly expressed.'' (197 Cal. 230 [240 Pac. 26].) It is true the Supreme Court of Oklahoma further distinguished the case of *Barbour* v. *Walker* from the Frost case by the fact that in the Frost case ''the transportation company was operating as a private carrier under a single contract with a single concern, while in the case at bar the defendants were operating under five separate contracts with as many different firms dealing in different classes of commodities on a large scale.'' Respondent relies on this

and other language of a similar import found in the case of *Barbour* v. *Walker,* as supporting his contention that the appellant, as it entered into a written contract with each passenger transported by it, amounting in all to over 7,000 contracts, was acting as a common carrier. ▉ The fact that the appellant entered into written contracts with its passengers before. hauling them in the stages is a matter of slight significance in this action. In our opinion, these written contracts neither helped nor prejudiced the position of the appellant. If it was holding itself out as a common carrier—that is to transport any person who might apply for transportation, then if it carried only one passenger it would be held to be engaged in the business of a common carrier, even if it had made a written contract with such passenger, regarding his transportation. On the other hand, if the appellant was transporting only a particular class, such as, for instance, its employees, and was not holding itself out to serve the public generally, then it could not be held to be a common carrier and the fact that it might or might not be operating under written contracts with its passengers would be a matter of no materiality. In the recent case of *Haynes* v. *MacFarlane,* 207 Cal. 529 [279 Pac. 436], the subject of written contracts entered into by a carrier was before this court. In that case the defendant had been ordered to discontinue his business of common carrier of freight by autotruck between Fresno and Hanford. Instead of complying with this order he continued to operate his truck line and to carry on his business by means of a separate written contract entered into by him with each of his former customers. The trial court found that the status of the defendant had not been changed by the so-called ''private contract'' method of his operations, and we held that ''the record supports the finding and the conclusion based thereon.'' It was evident in that case that the defendant was holding himself out to the public as a common carrier of freight. He had already entered into separate contracts with seven of his old customers and was about to make twenty additional contracts for the carriage of freight over his truck line. His position would have been the same had he attempted to carry on his business without these ''private contracts'' between him and his customers. It

was the manner in which he carried on his business that determined his status as a common carrier and not the fact that he was transacting business with his customers under a written contract. So in the present action we see nothing determinative of any question involved herein in the fact that the appellant entered into written contracts with its passengers. These contracts contained many provisions which we may consider the appellant deemed necessary to protect it in its transportation of its various employees such as the agreement of the employee to pay for his transportation out of the wages earned by him, and in the event of his discharge before such payment was made, an admission on the part of the employee that he was liable for the amount of said transportation. It also contained a further provision that in case the employee should work sixty days then a certain part of the cost of said transportation would be repaid him. The plan of having each passenger sign such a contract may have been adopted by appellant as a subterfuge to defeat certain provisions of the Auto Transportation Act. If so, it was a failure in that respect. But if adopted with the object of definitely setting forth the respective rights of the parties thereto, then it had some useful and meritorious purpose.

*Goldsworthy* v. *Public Service Commission, supra,* was an action instituted by the Public Service Commission of the state of Maryland against Goldsworthy and Buckell to enjoin them from operating a motor vehicle for the public transportation of passengers for hire. The defendants contended that they were not operating as common carrier, but under a contract between themselves, the purport of which clearly showed that they were simply operating a private carrier or transportation company. The court said, referring to the contract: "Its terms are peculiar, to say the least" and further added: "As Buckell was to pay $2 for each trip, whether there were 14 or less, it is not reasonable to suppose that he would not be expected by Goldsworthy to solicit business and take all he could get, up to the capacity of the truck, and there is nothing whatever in the contract to prevent that." The Supreme Court of Maryland held that a complaint showing these facts stated a good cause of action against the defendants and sustained

the order of the trial court overruling defendants' demurrer thereto. It is perfectly clear in that case that the defendants were soliciting business from the public and held themselves out at least to the carrying capacity of their truck as willing to carry all persons who might apply for passage. They were, therefore, common carriers under the definition of the authorities hereinbefore cited.

*Restivo* v. *Public Service Commission, supra,* was also decided by the Supreme Court of Maryland. The action was brought by Restivo against the members of the Public Service Commission of that state to restrain the Public Service Commission from preventing the plaintiff from operating certain busses and touring cars belonging to the plaintiff. The facts in the case show that the plaintiff was the owner of an autobus line and operating it between two certain cities of the state of Maryland under a legal permit from said commission. While such owner he sold the goodwill of said business for $6,000 and his permit was transferred to the purchaser. Shortly after the sale of the goodwill the plaintiff began to run his busses and cars on Sunday over a portion of the same route without obtaining any permit to do so. He was indicted and convicted of operating said busses and cars without a permit from the commission. He continued after his conviction to operate his busses and cars as he had done before conviction. He was notified by the commission that he would be further prosecuted if he did not cease his operation. He then brought action against the commission as stated above. The Supreme Court held he was operating as a common carrier and sustained a judgment in favor of the commission. There was no pretense in that case but that the plaintiff held himself out to carry any and all persons who would apply for passage. He therefore brought himself clearly within the terms of the law defining a common carrier.

The case of *Public Service Commission* v. *Western Maryland Dairy, supra,* was decided upon the authority of the two cases of *Goldsworthy* v. *Public Service Commission, supra,* and *Restivo* v. *Public Service Commission, supra.* The case of *Public Service Commission* v. *Western Maryland Dairy* is more favorable to the contention of plaintiff than any of the cases cited by him. The Western Maryland Dairy conducted its place of business in the city of Baltimore.

It purchased at wholesale its milk supply from the farmers residing in the state of Maryland and near-by states, and retailed the same to the inhabitants of the city of Baltimore. It owned its own trucks and the greater part of its milk supply was transported on said trucks from the different dairies or farms on which it was produced to its own place of business in the city of Baltimore. The Public Service Commission of the state threatened to prosecute the dairy company for its failure to obtain a permit from the Public Service Commission for the operation of its motor-trucks in the transportation of milk. This the company refused to do on the ground that it was merely transporting its own milk. Thereupon the dairy company filed a bill in equity against the commission to enjoin such prosecution. The trial court rendered judgment enjoining the commission, but on appeal this judgment was reversed. It appears that the main, if not the only grounds advanced by the dairy company for its refusal to obtain a permit was that it was transporting its own milk in its own trucks to its own dairy in Baltimore and was not subject to the provisions of the act. The Supreme Court held that the contention of the dairy company that it was transporting its own milk was not supported by the evidence and, accordingly, reversed the judgment. This case may lend some slight support to respondent's contention that the appellant is a common carrier and therefore subject to the provisions of the Auto Transportation Act of this state. But if it does, it is the exception to the rule and is contrary to the general rule enunciated by both the courts of this state and those of other jurisdictions. The parties to that action, if the opinion correctly states their position, appear to have been principally concerned with the issue as to the ownership of the milk which the dairy company was transporting and the court having decided that the producers of the milk and not the dairy company owned the milk, both court and counsel appear to have considered that the decision of that issue was determinative of the action itself. There was no showing whatever that the dairy company had ever carried or solicited transportation of any milk except that which it had purchased from the purchasers, nor was there any proof that it had held itself out to the general public as

a carrier of milk or any other commodity. It is difficult, therefore, to understand, in view of the great unanimity. of authority upon this subject, how the court could have held that the dairy company under such circumstances was a common carrier.

The case of *Doskovitch* v. *Board of Public Utility Commrs., supra,* involved the construction of a section of Kates Act, passed by the legislature of the state of New Jersey (P. L. 1916, p. 283; P. L. 1926, p. 219), governing the use and operation of automobile busses for hire in that state. Doskovitch contended that he was transporting only the employees of the Michelin Tire Company and, therefore, was not a common carrier. The Supreme Court of that state held to the contrary. That case differs from the present one in that there was no proof or even claim that Doskovitch had any connection with or was acting on behalf of the Michelin Tire Company. Had the facts shown that the tire company was transporting its own employees through the agency of Doskovitch, a different case would have been presented to the court, and one in which a different determination would probably have resulted.

In the case of *Davis* v. *People, supra,* the facts show that Davis was engaged in the transportation of freight of all kinds between Grand Junction and Paonia in the state of Colorado. His purported employer was an association of merchants, which he himself had formed, evidently for the purpose of evading the statute of the state of Colorado, governing the operation of common carriers. The court held that his scheme or plan was "a mere device to hoodwink the law."

The case of *Vallejo Ferry Co.* v. *Solano Aquatic Club,* 165 Cal. 255 [Ann. Cas. 1914C, 1197, 131 Pac. 864, 867], has been cited by each of the parties hereto and some reliance appears to be placed upon the decision in this case by each of said parties. The plaintiff was the owner of a franchise to operate a ferry between the city of Vallejo and Mare Island. Mare Island is owned by the government of the United States, and there were located thereon extensive shipbuilding plants in which were employed a large number of men, practically all of whom resided in the city of Vallejo. These government employees, or at least a considerable part of them, organized a club called

the Solano Aquatic Club, which club after its organiza-
tion and incorporation, began the operation of a ferry
between the city of Vallejo and Mare Island for the trans-
portation of its members only. Regarding the defendant
corporation the court said: ''Moreover, while it is said that
the membership consists exclusively of government em-
ployees, and while for the purpose of this consideration this
may be conceded to be a fact, it is nevertheless true that
the by-laws do not limit the membership to such persons,
but expressly throw the membership open to the general
public, making no other requirement of an applicant than
'good character and industrious habits.' Furthermore,
the by-laws declare that the membership shall not be limited
but 'shall depend upon the facilities available, the same
to be increased in the discretion of the board of directors.'
This, so far as concerns the ferry business of the appellant
(defendant), can mean nothing more than the corporation
will take into its so-called membership as many individuals
as it can transport, and will increase its membership with
its transportation facilities. Finally, it should be stated
that defendant is not operating under any ferry license
from the state or its mandatories, or from the United States
or any of its agencies. It runs its launches at its pleasure,
owing responsibility to no one and denying responsibility
to any one.'' The result of that litigation was that the
order of the trial court granting a temporary injunction
*pendente lite* against the defendant was affirmed by the
court. We find nothing in that case nor in the opinion
of the court rendered therein which in the least lends any
support to the respondent herein in its conclusion and
claim that the appellant in operating its stage line for
the transportation of its employees and their families was
engaged in the business of a common carrier. This con-
cludes the review of respondent's authorities. We find
nothing in them which would cause us to change or modify
our conclusion already stated herein that the appellant in
the operation of its said auto stage line was not acting as a
common carrier.

■ Under the Frost case, as decided by the Supreme
Court of the United States, the Railroad Commission of
this state, therefore, had no jurisdiction over appellant
in any manner whatever. It was free under these circum-

stances to operate its autostage line in the manner shown by the evidence herein without securing any certificate of public convenience and necessity from said commission. The operation of said stage line, and the carrying and transportation of passengers therein, did not, therefore, legally damage the respondent. The implied finding of the jury adverse to this conclusion finds no support in the evidence.

There is one other contention of the appellant which should receive consideration in this opinion. The court instructed the jury that the measure of the plaintiff's damage was the sum of $2.50 for each passenger carried by the defendant. This the appellant claims was error, and we think its contention must be sustained. Plaintiff, if damaged at all, would only have been damaged to the extent of the net profit which he would have made in transporting the passengers which he lost by reason of their riding in defendant's stage. This net profit would have been the difference between $2.50 per passenger, the fare which plaintiff was entitled to charge, and the cost to the plaintiff of transporting said passenger. This cost would be the expense of maintaining and operating said stage line. It is true that the evidence shows that the plaintiff maintained and operated his stage line, during all the time the defendant was transporting its said employees, and that during this time it carried only two per cent, while the defendant carried ninety-eight per cent of all the passengers transported over said route. Had plaintiff transported all of said passengers, including the ninety-eight per cent carried by defendant, it is manifest that the cost of said transportation would have exceeded the cost incurred by plaintiff in transporting only the two per cent which he did carry in his own auto stage; at least the court could not say as a matter of law that the cost in the two instances would have been the same.

The judgment is reversed.

Richards, J., Seawell, J., Preston, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied.

All the Justices concurred.