MICHIGAN  PUBLIC  UTILITIES  COMMISSION  v.  KROL.

1. COMMON CARRIERS—REGULATION OF COMMON CARRIERS ON PUBLIC HIGHWAYS.

Act No. 209, Pub. Acts 1923, as appears from its title and provisions, is designed to regulate and control those engaged in the business of common carriers upon the public highways of the State, and empowers the public utilities commission, in the public interest, to determine the number of persons, firms, or corporations who should be permitted to so operate.

2. SAME—COMMON CARRIER DEFINED.

A common carrier is one who, by virtue of his calling, undertakes, for compensation, to transport personal property from one place to another for all such as may choose to employ him; and every one who undertakes to carry for compensation the goods of all persons indifferently, is, as to liability, to be deemed a common carrier.

3. SAME—WHETHER ONE IS COMMON CARRIER IS MIXED QUESTION OF LAW AND FACT.

The question as to whether one is a common carrier is a mixed question of law and fact; what constitutes a common carrier being a question of law, and whether the service rendered comes within that meaning being a question of fact.

4. SAME—TEST OF COMMON CARRIER.

The test generally recognized as applicable in determining whether one is a common carrier is that a common carrier is obliged, within the limits of his ability, to serve all who apply, while a private carrier is under no such obligation.

5. SAME—COMMON CARRIER MAY NOT AVOID PROVISIONS OF REGULATORY STATUTE BY SUBTERFUGE.

One operating a common carrier motor vehicle freight service before the public utilities commission refused his application

On the question as to whether one operating a bus or stage is a common carrier, see annotation in 42 A. L. R. 853.

On jurisdiction of public service commission over carriers transporting by motor trucks or busses, see annotation in 1 A. L. R. 1460; 9 A. L. R. 1011; 51 A. L. R. 820.

As to whether persons or corporations engaged in local transportation of goods are common carriers, see annotation in 18 A. L. R. 1316.

for a permit to operate said business under the provisions of Act No. 209, Pub. Acts 1923, may not continue to operate the same identical business without a permit under the theory that he is a private carrier by the subterfuge of entering into contracts with his customers.

6. INJUNCTION—COMMON CARRIER OPERATING WITHOUT PERMIT MAY BE ENJOINED.

Injunction will issue, at the instance of the public utilities commission, to enjoin the operation of a common carrier motor vehicle freight service without a permit under the provisions of Act No. 209, Pub. Acts 1923.

Appeal from Chippewa; Stone (John G.), J., presiding. Submitted September 22, 1928. (Docket No. 151, Calendar No. 33,790.) Decided January 7, 1929.

Bill by the Michigan public utilities commission against Joseph Krol to enjoin the operation of a common carrier motor vehicle freight service without a license. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Wilber M. Brucker,* Attorney General, and *K. F. Clardy,* Assistant Attorney General, for plaintiff.

*Davidson & Hudson,* for defendant.

SHARPE, J. In 1925, and again in 1926, the defendant applied to the plaintiff commission for a permit to "operate common carrier motor vehicle freight service between .Sault Ste. Marie and Detour," in the county of Chippewa, in accordance with the provisions of Act No. 209, Pub. Acts 1923. Both applications were denied. The commission granted a permit therefor to the Chippewa Motor Transport Company. In its bill of complaint plaintiff alleges that defendant is, and has been for several years, engaged in the business for which such

permits were sought without obtaining the same, in violation of the penal provision in such act, and prays for an injunction restraining him from doing so.

The defendant, in his answer, admits that he is, and has been, engaged in such transportation business, but avers that he has done, and is doing, so as a private carrier, and not in violation of the statute. A decree was entered dismissing the bill, from which plaintiff appeals.

The title and first section of this act were quoted at length in *Rapid Railway Co.* v. *Utilities Commission,* 225 Mich. 425, 428, and need not be here repeated. The second section empowers the commission to prescribe rules and regulations governing such carriers. It may not refuse a permit "without just cause." Section 7 requires those to whom permits are granted to carry insurance for the protection of the property transported, and section 8 requires them to pay to the commission a fee for the privilege of engaging in such business, which shall be paid into the State treasury and used for highway purposes. The 9th section provides a penalty for a violation of any of its provisions.

Many of the States have somewhat similar statutes, but in some of them the purpose of the acts, as indicated by their titles and provisions, is to regulate the transportation of persons or property by motor vehicles. Under these acts it has been held that all carriers for hire, whether common or private, must submit to reasonable regulations and pay the license fees required as a condition to their use of the public highways. See *Rutledge Co-operative Assn.* v. *Baughman,* 153 Md. 297 (138 Atl. 29, 56 A. L. R. 1042), and *Barbour* v. *Walker,* 126 Okla. 227 (259 Pac. 552, 56 A. L. R. 1049), and cases cited therein.

Act No. 209, however, as appears from its title and provisions, has a different purpose. It is designed to regulate and control those engaged in the business of common carriers upon the public highways of the State. This court has so construed it (*People* v. *Carr*, 231 Mich. 246), as has also the Supreme Court of the United States (*Michigan Public Utilities Comm'n* v. *Duke*, 266 U. S. 570 [45 Sup. Ct. 191, 36 A. L. R. 1105]).

The commission is empowered in the public interest "to determine the number of persons, firms or corporations who should be permitted to so operate." *Rapid Railway Co.* v. *Utilities Commission, supra.* In granting a permit to the motor company the commission determined the necessity as a matter of public convenience for the operation by a common carrier of a service for transporting property by motor vehicle for hire between Sault Ste. Marie and Detour. And by its denial of a permit to defendant it also determined that but one such permit should be granted. In other words, it determined that the transportation business between these places did not warrant the granting of a permit to two persons to engage therein.

There is proof in the record from which it may fairly be inferred that the defendant was engaged in business as a common carrier between Sault Ste. Marie and Detour before the permits were refused. He was then, as now, carrying the United States mail under contract, and carried passengers and property in connection therewith. His applications for permits clearly evidenced a desire on his part to continue in such business as a common carrier. The record discloses that after such permit was refused the defendant and several of his former customers sought the advice of an attorney, and, as a result, separate written contracts were entered into by the

defendant with all, except two, of those engaged in the retail business at Detour who required such service, wherein the defendant, in consideration of a stated amount to be paid to him monthly, agreed "to act as drayman or expressman and to carry freight and packages" for them "at and in the village of Detour and from Detour to Sault Ste. Marie, Mich., or to any points intervening," as might be designated by them. The last paragraph thereof reads as follows:

"It is further agreed that his employment will not preclude the party of the first part from making similar contracts for the carriage and transportation of freight and parcels for other parties."

A similar contract was entered into with a woman who conducted a business at Drummond Island near Detour. The service required by these contracts was performed by defendant. He used two trucks for that purpose. He transported for others than those with whom he had contracts. As to some of these transactions, he testified that if persons at Detour wanted something from Sault Ste. Marie they would tell him about it and he would buy it and pay for it and get a discount on it to pay the cost of delivery; that he would go to the express office in Sault Ste. Marie and the agent there would tell him that he had "parcels for people in Detour and I have taken these parcels from the express office and delivered them. The same thing has been true of the Soo line freight office and the South Shore freight office." Among these were shipments from mail order houses to people in Detour. He also made deliveries to parties along the line of road. He would "pick up cream on the route that is covered by the Chippewa Motor Bus Company for Storey who has a creamery outside of the city;" that, when re-

quested to get some lumber by a man at Detour, he
would say, "Now, Gus, I can't bring in lumber here
for you, but I can buy and sell it for you," and he
was advised that this was a safe thing for him to
do, and he did so, charging a percentage for the de-
livery; that he had handled "a great deal of mer-
chandise" in that way "in the last two years." He
further testified, "I pick up all I can in this terri-
tory." He was asked: "You can't name to the
court here anyone who contracts freight shipments
between the Soo and Detour or between Detour and
the Soo whose business you would get if you had a
permit, other than those with whom you are now
contracting?" and answered: "Well, I haven't
gone around to find that out." He further testified:

"*Q.* And you would engage in a private contract
from Detour to the Soo with any responsible party
who would sign up—would you not?

"*A.* To any business man, yes.

"*Q.* Any business man that you thought would
pay?

"*A.* That had any amount of freight coming
that would be worth my while."

Several of the business men with whom defendant
had contracts were called as witnesses. They testi-
fied that their goods were handled in the same way
as before the contracts were made; that occasionally
they would request defendant to handle something
for one of their customers, and thus bring it within
their contract, where defendant would have handled
it independently before the contracts were made.

The question here presented is whether defendant
was engaged in the business of a common carrier.
A comprehensive definition of this term was given
in *Jackson, etc., Iron Works* v. *Hurlbut*, 158 N. Y.
34 (52 N. E. 665, 70 Am. St. Rep. 432), as follows:

"A common carrier is one who, by virtue of his

calling, undertakes, for compensation, to transport personal property from one place to another for all such as may choose to employ him; and every one who undertakes to carry for compensation the goods of all persons indifferently, is, as to liability, to be deemed a common carrier."

This definition is, in effect, that adopted by the writers of the text in 10 C. J. p. 41 and 4 R. C. L. p. 546, and is in line with the cases cited in the footnotes thereto. There must be an undertaking on the part of the carrier to transport personal property for all who may choose to employ him. The element of public service, the serving of all persons indifferently who apply for service, is recognized in all of the cases. It is the character of the business carried on that is determinative of its nature. It is a mixed question of law and fact. What constitutes a common carrier is a question of law. Whether the service rendered comes within that meaning is a question of fact.

It is urged that defendant did not transport for all those who might "choose to employ him;" that he did not undertake to carry for all persons "indifferently." The test generally recognized is that a common carrier is obliged, within the limits of his ability, to serve all who apply, while a private carrier is under no such obligation. In *Michigan Public Utilities Commission* v. *Duke, supra,* it was said:

"One bound to furnish transportation to the public as a common carrier must serve all, up to the capacity of his facilities, without discrimination and for reasonable pay."

We cannot be insensible to the fact that defendant is now doing substantially all of the carrying business between Sault Ste. Marie and Detour; that which the motor transport company may lawfully do under its permit. To all intents and purposes there

has been no change in the nature of the business done by him after the last permit was refused, except that he sought to protect himself from a violation of the law by securing the contracts entered into from his regular patrons and performing other services which might be called "errands" for customers. The law will not permit such an evasion of the intent and purpose of the statute. In *People* v. *Carr, supra,* wherein the defendants were prosecuted criminally for violating the act, this court said:

"Defendants had a right, in the prosecution of their taxicab service, to solicit business in their line at the village of Hart, and to carry patrons to Muskegon, or elsewhere, over the identical route served by the auto bus system operating under permit from the commission. They also had a right, upon request, to go to Muskegon to get patrons wanting their service to reach the village of Hart or be taken elsewhere, and, while so in Muskegon had a right to take any person, so requesting, to Hart or intermediate points. They could not, however, establish a service between Hart and Muskegon, or elsewhere, under schedule, or even intermittent, for the purpose of rendering a general auto bus service to the public, in competition with the auto bus service under State regulation, without a permit to do so from the commission. * * * Of course if the carriage of passengers is but a subterfuge to avoid regulation and the privilege tax imposed by the act, then there is guilt."

In *Frost Trucking Co.* v. *Railroad Commission,* 271 U. S. 583, 599 (46 Sup. Ct. 605, 47 A. L. R. 457), while holding that private carriers may not, by legislative fiat, be made common carriers under the California act, which provided for the regulation of such carriers, it was said:

"The court below seemed to think that, if the

State may not subject the plaintiffs in error to the provisions of the act in respect of common carriers, it will be within the power of any carrier, by the simple device of making private contracts to an unlimited number, to secure all the privileges afforded common carriers without assuming any of their duties or obligations. It is enough to say that no such case is presented here; and we are not to be understood as challenging the power of the State, or of the railroad commission under the present statute, whenever it shall appear that a carrier, posing as a private carrier, is in substance and reality a common carrier, to so declare and regulate his or its operations accordingly.''

In *Restivo* v. *Public Service Com'n,* 149 Md. 30 (129 Atl. 884), the court said:

''It is difficult to determine with exactness just when the owner of a motor vehicle is operating as a common carrier, as that term is ordinarily understood in the law, but the courts have not been inclined to excuse the increasing number of those who earn their livelihood by transporting persons or goods for hire in motor vehicles, from the responsibilities of common carriers simply on technical grounds, and they have been particularly slow to excuse them when their plan of operation bore evidence of being a studied attempt to reap the rewards of common carriers without incurring the corresponding liabilities.''

And in *Public Service Com'n* v. *Western Maryland Dairy,* 150 Md. 641 (135 Atl. 136):

''The effort of the appellee to escape the supervision of the commission upon the grounds stated by it, is, we think, to say the least, an attempt to evade the statute, and it should be so treated.''

The effects of defendant's operation are identical with those of common carriers. If he may, by entering into these contracts and conducting his business

in the manner testified to by him, relieve himself from complying with the law requiring a permit, and from being placed in the class of common carriers, it will furnish an easy way to escape liability. He was engaged in the same business now conducted by him at the time the law became effective. He recognized its application thereto, and twice applied for a permit thereunder. He should not be permitted to evade the requirement of the statute as he is now doing.

The decree entered will be reversed, and one entered here as prayed for in the bill of complaint, with costs to plaintiff.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred. POTTER, J., did not sit.