STATE OF IOWA ex rel. BOARD OF RAILROAD COMMISSIONERS, Appellant, v. MARION CARLSON, Appellee.

No. 41899.

NOVEMBER 21, 1933.

REHEARING DENIED APRIL 5, 1934.

J. H. Henderson, Commerce Counsel of Iowa, and Stephen Robinson, Assistant Commerce Counsel, and John E. Mulroney, County Attorney, for appellant.

D. M' .Kelleher, for appellee.

CLAUSSEN, J.—Appellee is a resident of the city of Fort Dodge, Iowa. At the time which is pertinent appellee had written contracts with a number of merchants in Fort Dodge by which he agreed to deliver parcels of merchandise to the customers of such merchants. The parcels of merchandise were gathered from the various merchants and were brought to a building maintained by appellee where the parcels were sorted into routes after which the packages for the various routes were loaded in trucks and delivered by appellee. Appellee rendered this delivery service only to merchants who were under contract with him. The business in which appellee was engaged had been in operation for a number of years and the record leaves no doubt but what at the time this action was commenced it was being operated on the same plan under which it had been operated for a number of years. There is nothing in the record to suggest that the plan of operation was a subterfuge adopted for the purpose of enabling appellee to avoid regulation by the state as a common carrier of goods.

This action is prosecuted in the name of the state of Iowa for the purpose of restraining appellee from continuing his enterprise until after he has complied with the provisions of the Code requiring the operator of trucks used for the public transportation of freight for compensation to secure a permit and has complied with the various provisions of the Code relating to such transportation.

In argument counsel for appellant say:

"The question in the case at bar is whether the defendant is engaged in the public transportation of freight and subject to chapter 252-C1, Code 1931."

The first section of chapter 252-C1 is given over to a definition of terms. It provides:

"The term 'motor truck' shall mean any automobile * * * used for the public transportation of freight for compensation, not operating between fixed termini, nor over a regular route."

This definition narrows the question which must be answered, and in the last analysis the vital question is whether appellee is engaged in the public transportation of freight.

When this question is resolved into terms having accepted legal significance, it becomes a question whether appellee is a common carrier of goods. State v. Campbell, 76 Iowa 122, 40 N. W. 100.

It is not contended by appellant that the question should be considered in any other form.

Appellee contends that he is not a common carrier of goods because he renders his service only for the individuals, firms, and corporations with whom he has contracts. Appellant says that even though it is true that appellee performs his services only for those under contract with him, that fact is not controlling. It may be conceded as an abstract proposition that the position of appellant in this respect is correct for it is recognized by the courts that a carrier who renders his services under contract may still be a common carrier.

Appellee also contends that under all the facts he is not a common carrier. As the situation appeals to us, the vital consideration is whether the appellee has so provided and used his facilities as to give to others, than those under contract with him, the right to command the use of his transportation services. If under all facts and circumstances the situation is such that *others* have the right to use appellee's transportation facilities, he is a common carrier. If, on the other hand, appellee is under no duty to perform his services, except for those with whom *he* elects to contract, then he is not a common carrier of goods. In United States v. Louisiana. & P. Ry. Co., 234 U. S. 1, 34 S. Ct. 741, 746, 58 L. Ed. 1185, the Supreme Court of the United States says:

"It is the right of the public to use the road's facilities and to demand service of it, rather than the extent of its business, which is the real criterion determinative of its character."

The courts of last resort of practically every state have recognized that a right on the part of the public to demand service must exist before one engaged in transporting freight becomes a common carrier. See 10 C. J., page 39, section 9, and page 65, section 54, where decisions of more than 35 of the states are collected.

The record indicates that appellee has contracts to deliver parcels of merchandise for many of the merchants of Fort Dodge, but it does not indicate that he has a substantial monopoly of the business. The record does not indicate a situation in which any merchant in the city of Fort Dodge would encounter any particular difficulty in delivering or securing the delivery of his merchandise to his patrons without using appellee's facilities. It is commonly known that in cities like Fort Dodge many means for the solution of

the delivery problem are available. In this situation neither public necessity nor convenience require that any merchant have appellee's facilities subject to his command. The record indicates nothing from which it can be inferred that the enterprise was intended for general public service at the time it was instituted, nor does it contain anything to suggest that the policy of the business has been changed in this respect in the interim. The only aspect in which appellee's enterprise can be said to be public is that the deliveries are made to the customers of appellee's patrons without distinction as to their identity or place of residence, other than that the service is confined to the city of Fort Dodge. But the delivery service is not performed for the individuals to whom delivery is made. Such service is rendered to the merchants who made the original sales. From the inception of the business, its service has been available only to those who contracted with appellee for it and in actual operation its service has been limited to those under contract for it. Appellee testified that he could handle more business and would be willing to contract to render his service to others, but he has never held himself out as being willing to perform his services for all merchants who might ask for it. He has clearly reserved to himself the right to contract with whom he desires. The manner in which the business was conducted has not been changed for the purpose of evading regulation, or for any other purpose. There is nothing in the physical situation or in the manner in which the business was either created or operated which gives the public the right to use appellee's facilities, and consequently it must be held that the appellee is not a common carrier of goods.

Appellant urges with vigor that the legislature intended, by the act under consideration, to regulate transportation facilities such as are furnished by appellee in the interest of public safety and in order that some revenue might be derived from the use of the highways furnished by the public. An examination of the acts of the legislature reveals that the field of motor transportation has been carefully examined and regulated by the legislature. If, in truth and in fact, it had been the design of the legislature to regulate transportation services of the character supplied by appellee, such intention would no doubt have been plainly expressed in the law. The act under consideration relates to the *public* transportation of freight. The transportation service rendered by appellee is purely

private, notwithstanding the fact that the service is performed for a number of individuals.

Upon the trial of the issues in the lower court, the court found that the appellee was not a common carrier and dismissed appellant's petition. We have reached the same conclusion, consequently the decree of the trial court is affirmed.—Affirmed.

ALBERT, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.