STATE OF IOWA ex rel. BOARD OF RAILROAD COMMISSIONERS,
Appellees, v. JACK ROSENSTEIN et al., Appellants.

No. 42315.

JANUARY 16, 1934.

Vernon W. Lynch, for appellants.

Stephen Robinson, and M. L. Mason, for appellees.

KINTZINGER, J.—The sole question for determination in this case is whether the defendant motor carrier is a common carrier or a private carrier.

It is conceded that the defendants operate a truck between fixed termini or over a regular route, in the state of Iowa, and at stated times. It is claimed by appellants, however, that under an agreement hereinafter set out the defendant Jack Rosenstein is employed by the Northern Iowa Film Service Association under a private contract to transport certain articles used by them, and furnish transportation service therefor, exclusively to the members of the

association, and that because of this contract he became and, is a private carrier. We have held in the recent case of State v. Carlson, 217 Iowa 854, 251 N. W. 160, that a private carrier is not subject to the provisions of chapters 252-A1 and 252-A2, and that in order to come within the terms of such law it is necessary to show that he is engaged in the "public transportation of freight" between fixed termini or over a regular route. Defendant Jack Rosenstein was engaged in transporting moving picture films and advertising matter regularly between the city of Des Moines and Charles City, Hampton, Forest City, Britt, Clarion, Eagle Grove, Nevada, Osage, Kanawha, and Mason City.

The truck used in such transportation is not owned by the Northern Iowa Film Transportation Association but is the property of the defendant Rosenstein. It is claimed, however, that under the agreement in question the members of the association employed Jack Rosenstein to devote his entire and exclusive time to the transportation of films to the members of the association, and in consideration of which they agree to pay him compensation as may be later agreed upon. The agreement is substantially as follows:

"That whereas the party of the first part desires to employ the party of the second part to devote his entire and exclusive time to the transportation and delivery of films to the members of the association, party of the first part agrees to pay the party of the second part compensation as may hereafter be agreed upon.

"Northern Iowa Film Service Ass'n.

"By E. E. Morris, W. F. Smith, Leo Gilligan, W. R. Bandy, Charles Peterson, Sam Titler, M. A. Brown, Jack Keuch, C. D. Armentrout, Chas. Marks, Geo. Hake, H. Werwerk, G. W. Haight."

This agreement bears no date, provides for no duration of time, and is not signed by Jack Rosenstein, the purported party of the second part.

The record shows that until shortly prior to March 1, 1933, the defendant Jack Rosenstein was associated with one Esther Smith, who was engaged in the transportation business, including films, etc., under a certificate of necessity, and is complying with the provisions of chapters 252-A1 and 252-A2 of the Code. That as such common carrier she was transporting theater films and advertising matter to various theaters in the towns in question.

The evidence shows that a dispute arose between the Smith

Transportation Company and the defendant Jack Rosenstein as a result of which his connection with the Smith Company was severed. That soon thereafter Rosenstein solicited the theater owners served by the Smith Transportation Company, for the purpose of securing their business, and of organizing the alleged "Northern Iowa Film Service Association." His solicitations resulted in the execution of the foregoing agreement.

At the trial the following stipulation, in substance, was agreed upon:

"It is stipulated * * * between the parties hereto, that the defendant Jack Rosenstein and the 'Northern Iowa Film Service Association' operate a Chevrolet truck, Iowa license No. 85-366, 1933, of one ton capacity, weighing three thousand pounds, upon the public highways of the State, and that they are engaged in the exclusive transportation of moving picture films and advertising matter by said truck; and that the transportation of such picture films and advertising matter and the services furnished is regular each week to the defendants' customers in the towns on said route which the defendants serve. That such service is for compensation by the week, as agreed upon, and not on a ton or mileage basis, or under any fixed rate. That such compensation is paid by the parties served. That the defendants are so operating without having first procured a certificate of convenience and necessity, as provided by chapter 252-A1 of the Code, and without having made payment of the motor carrier tax as provided by chapter 252-A2 of the Code of 1931. That over part of the route covered by the defendants, the State has already issued a certificate to Esther Smith who is paying the ton mileage tax provided by chapter 252-A2, and who is also engaged in film transportation. That the defendants operate about 1927 miles per week, and that the service so rendered is regular to the various towns or theaters which they serve."

That such service was furnished regularly over a regular route from Des Moines to theaters in Charles City, Hampton, Forest City, Britt, Clarion, Eagle Grove, Nevada, Osage, Kanawha, and Mason City.

The evidence shows that transportation service was also furnished to three theaters in Mason City and one or two others, which had not signed the association agreement, and who were not members of the alleged association. The owners of the Cecil Theatre,

the Palace Theatre, and the Strand Theatre at Mason City were not members of the association; they had not signed the agreement, and for the entire week preceding the trial of this action in the lower court, the defendant Rosenstein furnished service and delivered films to them at Mason City.

The evidence also fairly shows that at the time he solicited the owners of various theaters to become members of the alleged association, he told them it was for the purpose of being classified as a private carrier. Rosenstein had trouble with the Smith Company and he could not continue with them. He said he could not get a permit license because Smith had one; that he also stated·he was "sore" at the Smith Company and would make them "holler." .

The film association never had any meetings, its members never paid any dues, it had no officers; the truck used in furnishing the service belonged to the defendant Jack Rosenstein and not the association. The association as such never received any compensation for any of the services furnished by Rosenstein, but all compensation for service furnished was paid to Rosenstein. Rosenstein told prospective members he was organizing a route, and had an agreement drawn up to be signed by the members to organize as the "Northern Iowa Film Service Association." He told them he would have the greater share of theaters in his territory. He also told them there was nothing binding in the association contract, but that he (Rosenstein) thought that it might help him if they signed an association agreement; that he could not get a permit, but by having an association, he would be able to carry the films.

There was also testimony in the record tending to show that Jack Rosenstein said he was forming an association which would haul for all theaters in the territory who would sign the association agreement.

We have thus set out much of the record in detail because the question for determination is one of fact, as to whether or not the operator of the truck, under the evidence, comes within the meaning of the term "common carrier".

Section 5105-a6 provides:

"It is hereby declared unlawful for any motor carrier to operate or furnish public service within this state without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation."

It is not disputed that any person operating a motor truck between fixed termini ·or over a regular route, for the purpose of "public transportation of freight" for compensation, is a common carrier. Appellant contends that under the association agreement set out, the defendants were not engaged in "public transportation", that the relationship created was that of a private carrier. It is conceded that a "private carrier" operating between fixed termini is not subject to provisions 252-A1 and 252-A2.

The question of fact to be determined is whether defendants were engaged in "public transportation"; if so, the operator of the truck was a common carrier; if not, he was a private carrier.

It is a question of law for the court to determine what constitutes a common carrier, but it is a question of fact whether, under the evidence in a particular case, one charged as a common carrier comes within the definition of that term and is carrying on its business in that capacity. 10 C. J. 40.

The question whether one is a common carrier can sometimes be known only by particular proof of how his business is conducted, and what professions he made to the public regarding it. Campbell v. A. B. C. Storage & Van Co., 187 Mo. App. 565, 174 S. W. 140. The test is not whether he is carrying on a public employment, or whether he carries to a fixed place, but whether he holds out, either expressly or by a course of conduct, that he will carry for hire, so long as he has room, the goods of all persons, indifferently, who send him goods to be carried. Robinson v. Cornish (City Ct.) 13 N. Y. S. 577. A common carrier is one who holds itself out as ready to engage in the transportation of goods for hire as a public employment, and not as a casual occupation. It is sometimes said that one who undertakes for only a single occasion to carry goods for any person who desires to employ it for that occasion is a common carrier for that transportation. 10 C. J. 41, section 10.

It is not necessary, however, to classify one as a public carrier, that he be required to carry goods of any description for every person offering the same. It is not necessary that he carry all kinds of goods, if he professes to carry only a certain kind, and, if so, this does not take from him his status as a common carrier. But in order to be held liable as a common carrier, the goods in question must be such as he professes to carry. In other words a common carrier may hold itself out to the public as being a carrier of

specified articles only and if it is only engaged in the carriage of such articles it is under no obligation to carry other things. Campbell v. A. B. C. Storage & Van Co., 187 Mo. App. 565, 174 S. W. 140; 10 C. J. 41, section 11; Louisville & N. R. Co. v. Higdon, 149 Ky. 321, 148 S. W. 26; Wilson v. Atlantic Coast Line R. Co. (C. C.), 129 F. 774; Id., 66 C. C. A. 486, 133 F. 1022; Chicago, M. & St. P. R. Co. v. Wallace, 14 C. C. A. 257, 66 F. 506, 30 L. R. A. 161. So if he holds himself out as a carrier of a particular kind of freight generally, prepared for carriage in a particular way, he will only be bound to carry to the extent and in the manner proposed. 4 R. C. L. 551, section 11; Crescent Coal Co. v. Louisville & N. R. Co., 143 Ky. 73, 135 S. W. 768, 33 L. R. A. (N. S.) 442; Levi v. Lynn & B. R. Co., 11 Allen (Mass.) 300, 87 Am. Dec. 713; . Thompson-Houston Electric Co. v. Simon, 20 Or. 60, 25 P. 147, 10 L. R. A. 251, 23 Am. St. Rep. 86; Kirby v. Western Union Telegraph Co., 4 S. D. 105, 55 N. W. 759, 30 L. R. A. 612, 46 Am. St. Rep. 765.

"At common law no person was a common carrier of any article unless he chose to be, and unless he held himself out as such; and he was a common carrier of just such articles as he chose to be, and no others. If he held himself out as a common carrier of silks and laces, the common law would not compel him to be a common carrier of agricultural implements such as plows, harrows, etc.; if he held himself out as a common carrier of confectionery and spices, the common law would not compel him to be a common carrier of bacon, lard, and molasses." Kansas Pac. Ry. Co. v. Nichols, Kennedy & Co., 9 Kan. 235, loc. cit. 253, 12 Am. Rep. 494.

See, also, California Powder Works v. Atlantic & P. R. Co., 113 Cal. 329, 45 P. 691, 36 L. R. A. 648 and note; Wiggins Ferry Co. v. East St. Louis Union R. Co., 107 Ill. 450; Cleveland, C., C. & St. L. R. Co. v. Henry, 170 Ind. 94, 83 N. E. 710; Coup v. Wabash, St. L. & P. Ry. Co., 56 Mich. 111, 22 N. W. 215, 56 Am. Rep. 374; Oswego, D. & R. R. Co. v. Cobb, 66 Or. 587, 135 P. 181; Thompson-Houston Electric Co. v. Simon, 20 Or. 60, 25 P. 147, 10 L. R. A. 251, 23 Am. St. Rep. 86.

In the instant case it is conceded that the truck in question was operated solely for the purpose of carrying theater films and advertising material. Therefore, if the defendant Jack Rosenstein

held himself out to all the public engaged in that business, as offering to transport that class of goods, he would come under the definition of a common carrier. The undisputed evidence in this case shows that, in addition to the service furnished theaters which had signed the alleged association agreement, the defendant Rosenstein did transport, for the last week preceding the trial of this case, the same class of material to several other theaters in Mason City, Iowa, and a few other towns, which had not signed the alleged association agreement which the defendant claims makes him a private carrier. In fact this action was practically commenced while defendant Rosenstein was engaged in transporting goods to non-associate members in the same territory. Rosenstein was, to all intents and purposes, transporting theater films and advertising material the same as he was doing when connected with the Smith Company.

The evidence in this case upon this question fairly warrants the conclusion that the defendant Rosenstein was endeavoring to secure "association membership" contracts with all the picture houses in his territory up to the limit of his capacity. The testimony shows that he was "sore" at his former associate, and would soon make them "holler". It is apparent that he realized the improbability of his securing a certificate of convenience and necessity over the same route on which the Smith Company operated, and that in order to do any business in that territory, it would be necessary for him to come within the term of a private carrier. Michigan Public Utilities Commission v. Krol, 245 Mich. 297, 222 N. W. 718. In that case the court said:

"We cannot be insensible to the fact that defendant is now doing substantially all of the carrying business between Sault St. Marie and Detour; that which the motor transport company may lawfully do under its permit. To all intents and purposes there has been no change in the nature of the business done by him after the last permit was refused, except that he sought to protect himself from a violation of the law by securing the contracts entered into from his regular patrons and performing other services which might be called 'errands' for customers. The law will not permit such an evasion of the intent and purpose of the statute."

We recognize the rule laid down in the case of State v. Carlson, supra. That case, however, is distinguished from this, in that

the defendant there was simply operating a delivery truck in the city of Fort Dodge for customers of various stores with whom he was under a private contract to make deliveries in and about that town. In that case we said:

"Appellee rendered this delivery service only to merchants who were under contract with him."

While in the case at bar the appellant had been, up to the very time this case was tried in the court below, delivering the same class of goods to other theaters without a contract, and there is nothing in this record to show that such service would not have continued if the defendants had not been restrained.

From the evidence introduced in this case as shown by the record, we are constrained to find that it was the purpose of the defendant Rosenstein to offer his transportation service to all theaters in his territory if he could induce them to enter the association agreement. In fact some of the theater owners signed the association agreement with the understanding that Rosenstein *"would furnish transportation for all the theatres in their towns."* He was engaged in the transportation of one class of merchandise only, and, if his service was offered to all the public engaged in that class of merchandise in his territory, there would be no reason for saying he was not engaged in public transportation of such goods. Under such circumstances he would become a common carrier even though all of such theaters had signed the alleged association agreement.

He was furnishing the service to theaters outside of the alleged association practically up to the time this action was commenced. His attempt to organize the alleged association was evidently a subterfuge to avoid the effect of chapters 252-A1 and 252-A2 of the Code.

This state is now struggling with difficult problems incident to the growth of automobile traffic, and the statutes in question should be liberally construed to give effect to their true intent and purpose. In Bingaman v. Public Service Commission (1933), 105 Pa. Super. Ct. 272, 161 A. 892, 893, the court said:

"The evidence discloses that he did a motor trucking business, picking up goods at certain mercantile establishments and making deliveries en route. He, conceding this, explains that these operations were all performed in conformity with eighteen private con-

tracts made with various firms. These contracts are substantially uniform. They involve a compliance with a definite schedule on the part of Bingaman. They are made for one year with an option to either party to end them on 20 or 30 days' notice. Although there is no definite evidence of the appellant advertising or holding himself out as a common carrier, *he admits that he would haul anybody's goods if they would sign a contract,* and if approached on the subject would give the information that he was engaged in the business. There was some evidence that some merchandise was occasionally hauled and charged on the basis of the time consumed, and not under any written contract. It would seem that these acts are sufficient to constitute Bingaman a common carrier for within the limits of his operations he was available to every one who desired his services. If he, under his present arrangement, gets a new customer his engagement with such customer is the same as with all the rest of his patrons, and is in no sense of the word a special employment merely incidental or casual to his regular business. He cannot escape the application of the Public Service Act by making a written contract with each customer. * * * We have held that in a case closely resembling the present, the presence of a contract with each customer should not be a controlling factor in the determination of the question as to whether the person or corporation is a common carrier for 'contracts, express or implied, are an incident to nearly every form of transportation, whether by common or private carriage.' "

Under the evidence introduced in this case, the court below found that the operator of the truck was a common carrier. From a careful examination of all the evidence in this case, we are constrained to reach the same conclusion. We therefore find that, under the facts in this case, the operator of the truck in question was a motor carrier, furnishing public service in this state, between fixed termini, or over a regular route, and that as such was a common carrier and subject to the provisions of chapters 252-A1 and 252-A2.

The judgment of the lower court is therefore affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ANDERSON, KINDIG, and MITCHELL, JJ., concur.