[No. 39127. En Banc. September 13, 1968.]

GAYLORD N. McDONALD, *Appellant*, v. EDWARD IRBY *et al.*, *Respondents*.

WILLIAM McDONALD, *as Administrator, Appellant*, v. EDWARD IRBY *et al.*, *Respondents.**

*Reported in 445 P.2d 192.

*Hodge & Mann* and *Earl D. Mann,* for appellant.

*Ogden, Ogden & Murphy,* for respondents.

WEAVER, J.—Bill J. Newnom and Floyd Lambertson, partners (defendants and respondents), operated a service station and parking lot on the east side of U. S. Highway 99, approximately ½ mile from the terminal building of the Seattle-Tacoma International Airport. They also furnished complete automotive service, and made minor mechanical repairs.

By billboard and direct mailing to airline travel services, airlines, and airline patrons, defendants advertised that their parking service for a $1-per-day fee included transportation from their parking lot to and from the airline terminal building. For this, they used an 8-passenger Volkswagen microbus, which was driven by the partners' employee, Othar Woodley, on the day of the accident involved. Business competitors offer a similar service.

The partners' income from parking constituted approximately 50 per cent of their business income. About 98 per cent of the parking lot customers used the transportation service to and from the airport. On a peak day, from 50 to 100 cars parked on the defendants' premises; the microbus made approximately 50 trips per day, carrying from 115 to 130 passengers. The service was not regularly scheduled. The bus would operate whenever a parking customer wished transportation to the airport, or when a returning air traveler telephoned to be picked up at the airport and returned to his parked car.

Mr. and Mrs. Gaylord N. McDonald had parked their automobile on the partners' lot and were being driven to

the airport by Mr. Woodley in the microbus. At the intersection to the main entrance to the airport, a collision occurred between the microbus and an automobile driven by defendant Edward Irby. Mrs. McDonald was killed; Mr. McDonald was rendered incompetent due to brain damage; defendant Woodley was injured.

William McDonald commenced two actions for damages, which were consolidated for trial: the first, as guardian ad litem for Gaylord N. McDonald, an incompetent; the second, as administrator of the estate of Vera Ruth McDonald, deceased. Newnom, Lambertson, Woodley, Irby, and their marital communities, were named parties defendant. It is alleged that the negligence of each was a proximate cause of the accident. The alleged negligence of partners Newnom and Lambertson, however, and the resultant liability, if any, could only be vicarious since it must arise from the claimed negligence of their employee, Woodley, the driver of the microbus.

Defendant Woodley claimed damages for his injuries from defendant Irby, who counterclaimed against Woodley and the partners, Newnom and Lambertson for damage to his automobile.

After an extended trial, the jury returned its verdicts:

(a) In favor of plaintiff McDonald, as guardian ad litem and as administrator, for damages against defendant Irby;

(b) In favor of defendant Woodley for damages upon his cross-complaint against defendant Irby;

(c) In favor of defendants Newnom, Lambertson, and Woodley upon defendant Irby's counterclaim against them;

(d) In favor of defendants Newnom, Lambertson, and Woodley upon the claims of liability pleaded in plaintiff's amended complaints against them.

Pursuant to the verdicts, a money judgment was entered against Irby in favor of plaintiff, as guardian ad litem and as administrator, and in favor of Woodley against Irby, who has not appealed.

Plaintiff, as guardian ad litem and as administrator, appeals from that portion of the judgment that dismisses his

complaints with prejudice as to defendants Newnom, Lambertson, and Woodley.

The sole question presented by this appeal is the trial court's refusal to give plaintiff's requested instruction No. 2:

"Ordinary 'negligence' is defined as a failure to exercise reasonable and ordinary care such as an ordinarily careful and prudent person would use under the same circumstances; however, because the plaintiffs in this case were paying passengers of defendants Bill J. Newnom, Floyd Lambertson and Othar Woodley and their wives, such defendants owed plaintiffs a greater degree of care. A carrier of passengers for hire, while not an insurer of the safety of its passengers, owes them the highest degree of care for their safety which is consistent with the practical operation of its vehicle."

Having refused the requested instruction, the trial court gave the usual instruction on negligence[1] as being the failure to exercise reasonable and ordinary care. This, of course, became the test to be applied by the jury to Woodley's conduct at the time of the accident.

On the other hand, the crux of plaintiff's contention is that defendant Woodley's conduct, at the time of the accident, should not have been evaluated by "reasonable and ordinary care"; but should have been tested by the rule applicable to common carriers—"the highest degree of care . . . which is consistent with the practical operation of its vehicle." See *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d 461, 468, 398 P.2d 14, 401 P.2d 350 (1965).

Counsel have not cited nor have we found judicial precedent resolving the question of which rule to apply to the facts of the instant case. Decisions holding that carriers are, or are not, subject to regulatory ordinances and statutes applicable to common carriers are not necessarily determinative; but they are indicative of the test to be ap-

---

[1]Instruction No. 7. " 'Negligence' is the failure to exercise reasonable and ordinary care, and by the term 'reasonable and ordinary care' is meant that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances or conditions."

plied. What constitutes a common carrier is a question of law. The nature of a carrier must be determined by its method of operation. *Miles v. Enumclaw Co-operative Creamery Corp.*, 12 Wn.2d 377, 379, 121 P.2d 945 (1942).

This court made an evaluation of the "method of operation" in *Cushing v. White*, 101 Wash. 172, 181, 172 Pac. 229 (1918). The court said:

> ■t is manifest that a common carrier is one whose occupation is the transportation of persons or things from place to place for hire or reward, and who holds himself out to the world as ready and willing to serve the public indifferently in the particular line or department in which he is engaged; the true test being whether the given undertaking is a part of the business engaged in by the carrier which he has held out to the general public as his occupation, rather than the quantity or extent of the business actually transacted, or the number and character of the conveyances used in the employment. On the other hand, if the undertaking be a single transaction, not a part of the general business or occupation engaged in, as advertised and held out to the general public, then the individual or company furnishing such service is a private and not a common carrier.

■ The criteria for determining whether a carrier is subject to the rules applicable to a common carrier are: (1) the carriage must be part of the business; (2) the carriage must be for hire or remuneration; and (3) the carrier must represent to the general public that this service is a part of the particular business in which he is engaged, and that he is willing to serve the public in that business.

It is beyond dispute that transportation from the parking lot to and from the airport is an integral part and constitutes a substantial portion of defendants' business.

■ Defendants contend, but we do not agree, that the second criteria is not applicable since they charge $1 per day for parking and make no additional charge for the transportation. To say that the transportation is free is to be economically unrealistic. There is no requirement that a passenger pay a separate sum in order that the transportation be for a reward. With 98 per cent of their parking

customers using the transportation, the cost of its operation must, of necessity, be an element in determining the parking fee. The service was not gratuitous.

The partners argue that they did not represent that airport transportation was available to the *general public,* since the transportation was limited to customers of the parking facilities. We do not agree.

■ In *Terminal Taxicab Co. v. Kutz,* 241 U. S. 252, 60 L. Ed. 984, 36 Sup. Ct. 583 (1916), the same argument was advanced. It is true that the case involves the question of whether the taxicab company was under a regulatory statute, but the language of the court is persuasive when applied to the facts of the instant case.

> The next item of the plaintiff's business, constituting about a quarter, is under contracts with hotels by which it agrees to furnish enough taxicabs and automobiles within certain hours reasonably to meet the needs of the hotel, receiving the exclusive right to solicit in and about the hotel, but limiting its service to guests of the hotel. We do not perceive that this limitation removes the public character of the service, or takes it out of the definition in the act. No carrier serves all the public. His customers are limited by place, requirements, ability to pay and other facts. But the public generally is free to go to hotels if it can afford to, as it is free to travel by rail, and through the hotel door to call on the plaintiff for a taxicab. . . . The service affects so considerable a fraction of the public that it is public in the same sense in which any other may be called so. *German Alliance Ins. Co. v. Kansas,* 233 U.S. 389. The public does not mean everybody all the time.

The only condition affixed to the service—use of the parking facilities—is closely related to the transportation and does not void its public character.

We conclude that it was error for the trial court to refuse to instruct the jury that defendant Woodley's conduct at the time of the accident was to be measured by the highest degree of care for the safety of his passengers that was consistent with the practical operation of the microbus.

Defendants (respondents) contend that the proposed instruction is a comment on the evidence (proscribed by our

constitution), because it designates the McDonalds as "paying passengers." Ordinarily, the contention would have merit, but it does not in the instant case.

■ The definition of a common carrier is a question of law. *Big Bend Auto Freight v. Ogers*, 148 Wash. 521, 523, 269 Pac. 802 (1928). Whether a particular business is within the definition of a common carrier is also a question of law. See *Horluck Transp. Co. v. Eckright*, 56 Wn.2d 218, 352 P.2d 205 (1960). The application of an undisputed set of facts to a legal mold is a legal question, not a factual one for jury determination; hence, in order to give the proper instruction, it was not a comment on the evidence to identify the McDonalds as "paying passengers," for the undisputed evidence identified them as such.

Of course, it is a jury question whether defendant Woodley exercised the required degree of care. A finding that he was not chargeable with *ordinary* negligence does not preclude the possibility that he failed to exercise the higher degree of care applicable to common carriers. This is a factual question, and the trier of the facts should have been permitted to resolve it under proper instruction.

■ We cannot accept plaintiff's (appellant's) thesis that, in the event of a reversal, the new trial should be limited to a determination of liability, and the judgments for damages against Irby, who has not appealed, should be transferred against defendants Newnom, Lambertson and Woodley.

The record before us is partial, limited to the evidence necessary to present the sole question on this appeal—the refusal to give plaintiff's requested instruction. Defendants-respondents have not had an opportunity to raise any claimed errors directed to proof of damages.

A new trial must be ordered to determine liability because the trial court failed to instruct the jury properly. If liability is found to exist, the amount of damages must be determined. It does not follow, however, that both proce-

dures must be encompassed in the same trial. The answer is found in Civil Rule for Superior Court 42(b):

> *Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury.

The judgment of June 9, 1966, entered in King County Superior Court in cases Nos. 632159 and 634976, in so far as it dismisses plaintiff's complaints with prejudice against Bill J. Newnom, Floyd Lambertson, Othar Woodley, and their marital communities, is reversed; and a new trial is granted.

It is so ordered.

ALL CONCUR.