Shari A. KVALHEIM, Appellee,

v.

HORACE MANN LIFE INSURANCE COMPANY, Appellant.

Shari Anne KVALHEIM, as Executor of the Estate of Ruth Anne Hilmer, Deceased, Appellee,

v.

WASHINGTON NATIONAL INSURANCE COMPANY, Appellant.

No. 2–56172.

Supreme Court of Iowa.

June 26, 1974.

Beecher, Beecher, Holmes & Rathert, Waterloo, for appellants.

Alfred A. Beardmore, Charles City, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

LeGRAND, Justice.

While vacationing in Mexico in 1968, Ruth and Henry Hilmer sustained fatal injuries in an automobile accident. These consolidated cases were brought to enforce

the disputed terms of two insurance policies on their lives. In one case, Shari A. Kvalheim is plaintiff as beneficiary under a policy of insurance issued by defendant Horace Mann Life Insurance Company on the life of Henry Hilmer, and in the other she seeks payment as executor of the estate of Ruth Hilmer on a policy of insurance issued by the defendant Washington National Insurance Company.

In each case, the policy provides for increased payments if death resulted while the insured was a passenger in a public conveyance operated by a common carrier. The sole issue is whether the deaths of these two people occurred under such circumstances. Although the accident occurred in Mexico, the parties agree liability under the policies is to be determined by Iowa law. The trial court found for plaintiff in each case and we affirm.

This misadventure has already occasioned one appeal to this court although it was on issues unrelated to the present controversy. See Kvalheim v. Farm Bureau Mutual Insurance Company, 195 N.W.2d 726 (Iowa 1972).

The facts are virtually uncontested. Mr. and Mrs. Hilmer purchased a 15-day package tour of Mexico from J. Stewart Rotchford Travel, Inc., through a travel agency in Traer, Iowa. The cost included hotel accommodations and transportation. All this was arranged through a corporation operating in Mexico City named Perez, Perez & Perez, hereafter called Perez. This company furnished automobiles and drivers for the use of the tourists. The Hilmers were met at the airport upon their arrival and were transported to their hotel. Thereafter, the car and driver were available for designated excursions which had been arranged ahead of time. The driver was also a licensed guide qualified to describe and explain the sites visited. While on one of these side trips, the accident which caused the death of Mr. and Mrs. Hilmer occurred.

The policies of insurance here involved contained similar provisions. The one issued by Washington National Insurance Company included this clause:

"Any amount payable under the Accidental Death, Dismemberment or Loss of Sight section of this policy shall be doubled if accidental bodily injury occurs (1) while the insured is a passenger upon a public conveyance * * * provided and operated by a common carrier for regular passenger service * * *."

The comparable conditon of the Horace Mann Life Insurance Company policy was as follows:

"INCREASED ACCIDENT INDEMNITY PAYABLE FOR DEATH OR DISMEMBERMENT IN A PUBLIC CONVEYANCE: If the injury resulting in a loss, for which indemnity is payable * * * under ACCIDENTAL DEATH is sustained while covered person is a passenger in or upon any public conveyance, the company will pay a total indemnity equal to five times the applicable indemnity * * * ."

That policy further defined a public conveyance as follows:

" 'Public conveyance' as used herein means any land, water, or air conveyance provided by a common carrier, and in or upon which conveyance a covered person is riding, boarding or alighting from."

In determining if Mr. and Mrs. Hilmer were riding as passengers in a public conveyance provided by a common carrier, we adhere to the rule that the court should determine what constitutes a common carrier as a matter of law. Whether the circumstances bring a case within that definition then becomes a question of fact to be decided by the jury or, as here, the court sitting without a jury. Circle Express Company v. Commerce Commission, 249 Iowa 651, 658, 86 N.W.2d 888, 893 (1957); State ex rel. Board v. Rosenstein,

217 Iowa 985, 989, 252 N.W. 251, 253 (1934).

Concededly the question is a close one under the circumstances now before us. We adopt the trial court's rationale in holding that the fatal accident occurred while Mr. and Mrs. Hilmer were passengers in a public conveyance furnished by a common carrier as that term is used in the insurance policies under which these claims were made.

We believe our holding in the *Circle* case points the way to the correct solution of the problem now before us. Although the *Circle* case has been rather sharply, and perhaps unfairly, criticized in 47 Iowa L.Rev. 637 (1962), it nevertheless remains unaffected by any later announcement of this court.

Decided in 1957, the *Circle* case shifted the emphasis in defining a common carrier away from the duty concept apparently so important in State v. Carlson, 217 Iowa 854, 856, 251 N.W. 160, 161 (1933). Parenthetically we note that in *Circle* we suggest it is not inconsistent with the real holding in the *Carlson* case. In *Circle* we place great significance on the conduct of the carrier in holding himself out as one willing to accept the business of all indiscriminately. We quote from that decision:

"There have been various definitions of a common carrier, * * * but it will suffice to say that the distinctive characteristic of a common carrier is that he holds himself out as ready to engage in the transportation of goods for hire, as a public employment, and not as a casual occupation, and that he undertakes to carry for all persons indifferently, within limits of his capacity and the sphere of the business required of him." (249 Iowa at 658, 86 N.W.2d at 893.)

"It is sometimes said the test is whether he has a *duty* to serve all indifferently and is liable for refusal without sufficient reasons for said refusal to act. However, we think such a test is of little value in deciding whether the conduct of the carrier is such as to make him a common carrier. Its application here tends only to confuse. [Emphasis in original.]

"Whether such a duty attaches as a necessary incident to the relation of common carrier under any and all circumstances need not be discussed. Conceding, however, that such a duty rests upon a common carrier, to claim one is not a common carrier because he has persistently disregarded his duty and has arbitrarily chosen whom he would serve, notwithstanding the fact that he has invited the public to apply, is to make a public duty determinable by the will and pleasure of the individual, and not by principle or law. * * *

"The question here, then, is not one of duty, but of liability. Whatever the duties may be, they do not establish or determine the relation, but result from the relation. * * * In United States v. Ramsey, 197 F. 144, 146, 42 L.R.A.,N.S., 1031 * * * the court quotes with approval from Moore on Carriers, page 18, as follows: 'A common or public carrier is one who, by virtue of his business or calling, *undertakes,* for compensation, to transport personal property from one place to another, * * * for all such as may choose to employ him; and every one who *undertakes* to carry and deliver, for compensation, the goods of all persons indifferently, is, as to liability, to be deemed a common carrier.' (Emphasis supplied.)" (249 Iowa at 659, 88 N.W.2d at 893, 894.)

"While many courts seem to have applied the 'duty' or 'right to command' test in cases of this kind, as previously stated, we think it is useless in determining the question here involved. If there was in truth and in fact a holding out to serve all indifferently, then the carrier *must* perform the law-imposed duty to serve all by contracting with them on demand. It is a common carrier, not be-

cause it must perform duties required of the carrier, but because of a legal undertaking." (Emphasis in original.) (249 Iowa at 661, 88 N.W.2d at 895.)

■ One who holds himself out to the public as engaged in the business of transporting persons for hire to the extent of his facilities is a common carrier. 5 Blashfield Automobile Law and Practice § 221.2 (1966) ; 14 Am.Jur.2d Carriers § 734 (1964) ; Arrow Aviation, Inc. v. Moore, 266 F.2d 488, 490 (8th Cir. 1959) ; McDonald v. Irby, 74 Wash.2d 431, 435, 445 P.2d 192, 195 (1968).

■ In the instant case Perez fulfilled these conditions. The firm advertised its availability in a number of ways; it accepted all who applied for its services with only rare exceptions, if any; in addition to offering its services to a number of tour agencies, it accepted walk-in business regularly. It is clear Perez held itself out as willing to furnish this sort of transportation for all who requested its services within the limits of its facilities.

We quote as follows from the findings of the trial court:

"Rotchford Tours, Inc. offers package tours of Mexico and elsewhere to the public through numerous travel agencies [one of which is at Traer, Iowa, where the Hilmers purchased their tour] * * * Perez, Perez & Perez, with an office on the second floor of a building in Mexico City, operates a fleet of some 14 to 20 different types of cars and buses and offers tours of Mexico. [The Hilmers purchased] a 15-day tour of which the first three and the last six days are [scheduled ahead of time] and for the intermediate six days the client has a choice of four planned trips. In the course of these tours Perez provides with each vehicle a state-licensed chauffer who is also a state-licensed guide. For the total price of the tour, Perez meets the client at the airport, arranges hotel accommodations and meals, arranges tips, supervises luggage handling, leaves a call at the hotel room at the appropriate time, and while on tour the chauffer-guide, in addition to driving, discourses on the sights, aids in interpreting and is generally solicitous of the passengers' needs. The Perez vehicles are licensed by the state as vehicles for hire. The Department of Tourism of * * * Mexico fixes by regulation the charges made by hotels and by Perez for mileage charged the passengers and for guide service according to schedules which are published. The passenger is entitled to a seat in the vehicle provided for his transportation by Perez and a number of other passengers are likewise assigned to a single vehicle. Some effort is made by Perez to group passengers in a compatible manner by language, age and the like. While the route is generally fixed by the published schedule, some variations therefrom are often made at the volition of the travelers such as a visit to a local market or a more extended stay at some attraction. Both the Rotchford and the Perez brochures in the fine print thereof reserve a right to decline to accept any person. In no instance has a person been rejected.

"At the Perez office which is staffed by 14 to 20 persons any person may negotiate a tour for any number of places. No timetable bus tours are available from this office. The window bears a legend 'Sightseeing Tours'. It is estimated that 25 to 30 per cent of the total package offered by Rotchford represents transportation. The Rotchford Tours, Inc. acts as a broker of these tours offering and describing them under its own name and has a contract with Perez to carry out its usual function. The same package is listed in a Perez brochure * * * and is listed at the same figure by both Rotchford and Perez. Perez advertises its facilities on its letterhead, on its cards, in weekly bulletins, and in brochures which are distributed widely in tourist agencies and in motels, both in

Mexico and elsewhere. The Rotchford brochure receives similar wide distribution. Braniff Airlines, for instance, receives and distributes some 15,000 Perez brochures annually and sells the Perez tours out of its many offices. Rotchford has sent some 5,000 paying customers on its tours to Perez."

We hold there was substantial evidence to support all of these findings and that they justified the trial court's conclusion defendant was a common carrier.

■ While a common carrier must serve the public, no common carrier can cater to *all* the public. This has frequently been recognized by the courts. See Gornish v. Pennsylvania Public Utility Commission, 134 Pa.Super. 565, 4 A.2d 569, 571, 572 (1939); Terminal Taxi Cab Company, Inc. v. Kutz, Dist. of Col., 241 U.S. 252, 36 S. Ct. 583, 60 L.Ed. 984, 986 (1916). We quote from the latter case as follows:

"No carrier serves all the public. His customers are limited by place requirements, ability to pay, and other facts. * * * The public does not mean everybody all the time."

Defendant argues Perez cannot be considered a common carrier for a number of reasons. We have considered all of them and believe the arguments against a finding of common carriage may be fairly summarized as follows: (1) Carriage was by virtue of a contract between Rotchford and Perez which set up various controls and conditions and provided for various special services in addition to transportation; (2) transportation was only a minor part of the service rendered by Perez generally, representing only 25 to 30 per cent of the Perez' total volume; and (3) transportation was limited to those availing themselves of the J. Stewart Rotchford Travel, Inc. tours under the contract by which the services were rendered.

Before reciting a number of cases from this and other jurisdictions which support the result we reach, we refer to State ex rel. Board v. Rosenstein, supra, 217 Iowa at 989, 990, 252 N.W. at 254, where we held a carrier of goods need not carry *all* goods to be a common carrier. We quote from that decision:

"It is not necessary that he carry all kinds of goods, if he professes to carry only a certain kind, and, if so, this does not take from him his status as a common carrier. * * * In other words a common carrier may hold itself out to the public as being a carrier of specified articles only and if it is only engaged in the carriage of such articles it is under no obligation to carry other things."

While there are fundamental differences between the legal relationship between carrier and shipper in the carriage of goods and carrier and passenger in the carriage of persons, we believe this reasoning is as applicable to the carriage of persons as to the carriage of goods. See 13 C.J.S. Carriers § 537 (1939). It summarily disposes of defendant's argument that Perez was not a common carrier because it transported only tourists. This same type of argument was discounted in Terminal Taxi Cab Company, Inc. v. Kutz, Dist. of Col., supra, 60 L.Ed. at 986, where only patrons of a certain hotel were accepted under a contract arrangement, and in McDonald v. Irby, supra, 445 P.2d at 195, where customers of a parking lot were given transportation to and from a nearby airport.

Applying the *Rosenstein* language to the case now before us, we hold Perez was a common carrier within the scope of its commitment to transport all persons who qualified under the limits it had established for the conduct of its business.

■ In reviewing the record in this case we also keep in mind the admonition that a carrier's status is to be determined by what it does rather than by what it says it does. Lone Star Steel Co. v. McGee, 380 F.2d 640, 648 (5th Cir. 1967), cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967); Terminal Taxi Cab Co. v. Kutz, Dist. of Col., supra, 60 L.Ed. at 986; Circle

Express Co. v. Iowa State Commerce Commission, supra, 249 Iowa at 662, 86 N.W.2d at 895; McDonald v. Irby, supra, 445 P.2d at page 194. What Perez did makes it a common carrier.

Nor can we accept defendants' argument that such status is changed because Perez was not exclusively in the business of transporting persons but rather rendered other, and more substantial, services as well. We believe this is answered by the following from 13 Am.Jur.2d Carriers § 5 (1964):

"While common carriers undertake to carry for the public generally as a business, it is not necessary, in order to make them such, that this should be their exclusive occupation. They may combine it with another or several vocations, and still be common carriers and subject to the extraordinary liabilities which have been imposed on them in consequence of the public nature of their employment."

See also McDonald v. Irby, supra, 445 P.2d at pages 193 and 195.

Some of the authorities which lend support to our view are here set out. None is squarely in point but, taken together, they make out an unanswerable argument for the result reached by the trial court. Circle Express Company v. Iowa State Commerce Commission, supra, 249 Iowa at page 660, 86 N.W.2d at page 894 (existence of contract not determinative); Terminal Taxi Cab Company, Inc. v. Kutz, Dist. of Col., supra, 60 L.Ed. at page 986 (serving only certain hotel patrons); Demetrion v. Edwards, 416 F.2d 958, 959 (7th Cir. 1969) (taxi cab common carrier even when outside city it was authorized to serve); State ex rel. Board v. Rosenstein, supra, 217 Iowa at 992, 252 N.W. at 255 (common carrier although carrying only theater material); Heuer Truck Lines v. Brownlee, 239 Iowa 267, 270, 271, 31 N.W. 2d 375, 377 (1948) (common carrier cannot

avoid that status by entering into contract); M & R Investment Company v. C.A.B., 308 F.2d 49, 50 (9th Cir. 1962) ("free" flight included in package tours are common carriage); Cummings v. Great American Casualty Co., 183 Minn. 112, 114, 235 N.W. 617, 618 (1931) (motor boat operated for excursion purposes only); Straley v. Idaho Nuclear Corp., 94 Idaho 917, 919–921, 500 P.2d 218, 220–222 (1972) (bus used to transport "authorized personnel" only).

In summary, we disagree with defendant's assertion the trial court applied the wrong legal standards in fixing the status of Perez as a common carrier. Since our *Circle* case at least, the standard to be used in measuring a carrier's status is whether it holds itself out to the public as furnishing certain transportation services for hire. We believe this is the clear import of the *Circle* case, which incidentally is recognized in the Iowa Law Review article previously referred to, where the author mentions "myriad elements" considered by us in the "muddled past" and then says:

"Perhaps the true standard is a combination of all these [elements], or more simply, *perhaps it is whether or not the carrier is holding out to the general public*." (Emphasis supplied.) (47 Iowa L. Rev. at 647, 648.)

We find the trial court properly held as a matter of law that a common carrier of persons is one who holds himself out to the public as willing to transport for hire all those who come within the scope of the service offered by him. We further find there is substantial support in the record for the factual finding that Perez was a common carrier when tested by this rule. That finding is therefore binding on appeal. Rule 344(f), (1), Rules of Civil Procedure.

The judgments are accordingly affirmed.

Affirmed.